# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

Docket No. 26-50418

L.M.L. and K.G.S., on behalf of themselves and all those
similarly situated,

*Plaintiffs – Appellees*

v.

FREEMAN F. MARTIN, in his Official Capacity as Director of the Texas
Department of Public Safety,

*Defendant – Appellant*

**On Appeal from**
United States District Court for the Western District of Texas (Austin),
No. 1:26-cv-01170-DAE

## PLAINTIFFS-APPELLEES' OPPOSITION TO
## DEFENDANT-APPELLANT'S MOTION FOR STAY PENDING APPEAL

David A. Donatti
(TX Bar No. 24097612)
Adriana C. Piñon
(TX Bar No. 24089768)
Carolina Rivera Nelson (TX Bar No.
24132741)
AMERICAN CIVIL LIBERTIES
UNION OF TEXAS
P.O. Box 8306
Houston, TX 77288
Telephone: (713) 942-8146
Facsimile: (713) 942-8966
ddonatti@aclutx.org

Cody Wofsy
Spencer Amdur
Hannah Steinberg
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
425 California Street, 7th Floor
San Francisco, CA 94104
T: (415) 343-0770
F: (332) 220-1702
cwofsy@aclu.org
samdur@aclu.org
hsteinberg@aclu.org

apinon@aclutx.org
criveranelson@aclutx.org

Daniel Hatoum
(TX Bar No. 24099136)
TEXAS CIVIL RIGHTS PROJECT
P.O. Box 219
Alamo, TX 78516
(956) 787-8171 ext. 208
daniel@texascivilrightsproject.org

Kate Gibson Kumar
(TX Bar No. 24137588)
Daniel Woodward
(TX Bar No. 24138347)
TEXAS CIVIL RIGHTS PROJECT
P.O. Box 17757
Austin, TX 78760
(512) 474-5073 ext. 225
kate@texascivilrightsproject.org
danny@texascivilrightsproject.org

Dustin Rynders
(TX Bar No. 24048005)
TEXAS CIVIL RIGHTS PROJECT
PO Box 1108
Houston, TX 77251-1108
dustin@texascivilrightsproject.org

Kathryn Huddleston* (TX Bar No. 24121679)
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
915 15th Street, NW, 7th Floor
Washington, DC 20005
T: (212) 549-2500
khuddleston@aclu.org

Omar Jadwat
Lee Gelernt
Grace Choi
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad St., 18th Floor
New York, NY 10004
T: (212) 549-2660
ojadwat@aclu.org
lgelernt@aclu.org
gchoi@aclu.org

*Barred in Texas and Arizona, not barred in the District of Columbia, practice supervised by a member of the D.C. Bar

For Plaintiffs-Appellees

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of 5th Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

**Petitioners-Appellees:** L.M.L. and K.G.S., represented by American Civil Liberties Union Foundation attorneys Cody Wofsy, Hannah Steinberg, Spencer Amdur, Kathryn Huddleston, Omar Jadwat, Lee Gelernt, and Grace Choi; and American Civil Liberties Union Foundation of Texas attorneys David A. Donatti, Adriana C. Piñon, and Carolina Rivera Nelson; and Texas Civil Rights Project attorneys Daniel Hatoum, Kate Gibson Kumar, Daniel Woodward, and Dustin Rynders.

**Respondents-Appellees** are government officials and entities.

*/s/ Cody Wofsy*

Cody Wofsy
*Attorney of Record for Plaintiffs-Appellees*

## INTRODUCTION

The district court correctly enjoined provisions of Senate Bill 4 ("SB4") as preempted by federal law. In so doing, it followed not only a panel opinion of this Court, *United States v. Texas*, 144 F.4th 632, 667 (5th Cir. 2025), albeit one ultimately rejected on standing grounds, 173 F.4th 659 (5th Cir. 2026) (en banc), but also *every* other court to have addressed similar laws modeled after SB4, including a unanimous Eighth Circuit panel, *see Iowa Migrant Movement for Just. v. Bird*, 157 F.4th 904 (8th Cir. 2025) ("*Iowa*"), *en banc denied*, 166 F.4th 688 (8th Cir. 2026); *Idaho Org. of Res. Councils v. Labrador*, 780 F. Supp. 3d 1013 (D. Idaho 2025); *Fla. Immigrant Coal. v. Uthmeier*, 780 F. Supp. 3d 1235 (S.D. Fla. 2025); *Padres Unidos de Tulsa v. Drummond*, 783 F. Supp. 3d 1324 (W.D. Okla. 2025); *United States v. Iowa*, 737 F. Supp. 3d 725, 751 (S.D. Iowa 2024). A unanimous panel of the Eleventh Circuit, and the Supreme Court with no noted dissents, denied applications to stay an injunction of Florida's similar law. *Fla. Immigrant Coal. v. Att'y Gen.*, No. 25-11469, 2025 WL 1625385 (11th Cir. June 6, 2025) ("*FLIC*"); *Uthmeier v. Fla. Immigrant Coal.*, 145 S. Ct. 2872 (2025). This Court should do the same. *See United States v. Texas*, 97 F.4th 268 (5th Cir. 2024) (denying stay).

Defendant Freeman Martin's threshold and procedural arguments lack merit. He does not contest standing as to the reentry provision of SB4, and therefore has

1

no grounds to assert the district court "lacked jurisdiction." Mot. 1. And as to the removal provisions, he ignores the ways in which SB4's provisions work together as a unified system threatening plaintiffs with arrest *and* coerced return. As for provisional class certification, the district court afforded Defendant extraordinary access to expedited discovery at this early stage of the litigation, which only served to underscore that Plaintiffs have satisfied all the requirements to proceed on behalf of the class. The district court made clear that it is prepared to revisit those conclusions as the case proceeds, Appx.0256, but that possibility is no reason to interfere with the court's order preserving the status quo for the class while the case moves towards final judgment.

As unanimous panels of the Eighth and Eleventh Circuits explained, states have ample opportunities to address their concerns about immigration *within* the system Congress created, including by participating (as Texas already does) in formal agreements to assist *federal* immigration enforcement. *Iowa*, 157 F.4th at 929; *FLIC*, 2025 WL 1625385, at *6. In light of those opportunities, and the harms facing Plaintiffs and class members, the equities disfavor any stay pending appeal.

## ARGUMENT

### I. PLAINTIFFS HAVE STANDING.

Defendant does not contest Plaintiffs' standing to challenge the reentry provision of SB4, Tex. Penal Code § 51.03, nor the provision that prohibits

abatement of prosecution, Tex. Code Crim. Proc. art. 5B.003, but contests their standing to challenge the removal mechanisms that such a prosecution triggers, Tex. Code Crim. Proc. art. 5B.002; Tex. Penal Code § 51.04. However, SB4 cannot be parsed so finely: Its provisions function together, and the district court properly enjoined them together.

The district court rightly held that Plaintiffs showed pre-enforcement standing. *See McNutt v. U.S. Dep't of Just.*, 173 F.4th 204, 213 (5th Cir. 2026). Both plaintiffs face prosecution under the reentry provision of SB4, Appx.0199-200, and may vindicate their own "constitutional interest" in federalism, *Bond v. United States*, 564 U.S. 211, 220, 225-26 (2011); *see* Appx.0200-03; *Kentucky v. Yellen*, 54 F.4th 325, 336 (6th Cir. 2022). And they "have provided good evidence that the threat of enforcement is not chimerical." Appx.0203-07 (citation modified).

In his stay motion, Defendant contests none of this. Instead, he attacks Plaintiffs' standing to challenge only "the return order provisions," namely Article 5B.002 (directing issuance of return orders) and Section 51.04 (criminalizing refusal to obey such orders). Mot. 7. He suggests that these provisions should be considered independently of the reentry crime for purposes of standing. Mot. 7-9.

That argument does not comport with how SB4 is structured. There are no affirmative defenses to the reentry crime, Tex. Penal Code § 51.03(a), and SB4 *requires* issuance of a return order upon conviction, Tex. Code Crim. Proc. art.

5B.002(d). That order immediately coerces compliance by threatening the recipient with up to 20 years in prison for failure to leave the country. Tex. Penal Code § 51.04. Thus, an individual with a credible threat of prosecution under Tex. Penal Code § 51.03 also by necessity faces a credible threat of a mandatory state removal order, and a credible threat of being subject to the unlawful coercion worked by that removal order to leave the country or face an additional 20 years in prison. *Iowa*, 157 F.4th at 915-16 (finding standing to challenge Iowa's version of SB4's removal provision because "an order of removal is required after a successful conviction under" the reentry provision).[1]

The same is true of the supposedly "voluntary" removal mechanism established by SB4. To push people to quickly accept state removal orders, a state magistrate judge may alternatively enter an Order to Return at the beginning of the prosecution if certain conditions are met. Tex. Code Crim. Proc. art. 5B.002(a)-(c). That is, "Texas forces a decision: you either leave now or face criminal prosecution, which will be followed with a mandatory state deportation order in any case." *Texas*, 173 F.4th 741 (Higginson, J., dissenting). Regardless, prosecution for

---

[1] Citing the State's oral argument statements, Defendant contends that a person is not threatened with prison for refusal to depart if the federal government "opposes removal." Mot. 3. That asserted limitation is found nowhere in the statute, and argument statements are binding on no one. The Eighth Circuit recently rejected a similar request "to ignore the plain meaning of" Iowa's version of SB4. *Iowa*, 157 F.4th at 926.

reentry brings a promise of a state removal order; there is nothing "speculative" about that. Mot. 9.

Indeed, the statute was designed specifically in this way. As its sponsor explained, the legislature's goal was "not to incarcerate more people . . . . [T]he primary focus would be to return those folks to the country from which they came."[2] The speaker of the house further noted that a system with only entry and reentry crimes, but lacking the mechanisms to funnel people into state deportation as an alternative to conviction and prison terms, would impose "the exorbitant costs of [noncitizens'] long-term detention, including healthcare, housing, and meals" on Texas. *Id*. Where the provisions were designed to, and do, work together to generate removal orders rather than as traditional criminal enforcement provisions, Texas's effort to split standing hairs blinks reality. *See Speech First, Inc. v. Fenves*, 979 F.3d 319, 335 (5th Cir. 2020) (finding standing to challenge "intertwined" policies).

Even if it had merit, this argument cannot support the stay Defendant requests. *First*, at most this argument would warrant a stay only as to the removal provisions—not the reentry crime. And, *second*, Defendant does not identify any way in which Texas is harmed by an injunction against enforcement of the removal

---

[2] Phil Prazan, *Feud Between House and Senate Leaders May Scuttle Far Reaching Border Security Bill*, NBC DFW (Nov. 5, 2023), https://perma.cc/9V3D4B59.

provisions where it may not enforce the predicate reentry crime in the first place. The Court should therefore deny a stay outright, or, at most, stay only the injunction of the removal provisions.

## II.    SB4 IS PREEMPTED.

1. As the district court held, SB4 is field preempted.  Field preemption may be inferred "from a framework of regulation so pervasive that Congress left no room for the States to supplement it or where there is a federal interest so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject." *Arizona v. United States*, 567 U.S. 387, 399 (2012).  Here, both prongs are satisfied. *See FLIC*, 2025 WL 1625385, at *3 (finding likely preemption of "the field of alien entry into and presence in the United States").

"For nearly 150 years, the Supreme Court has recognized that the power to control immigration—the entry, admission, and removal of aliens—is *exclusively* a federal power." *Texas*, 144 F.4th at 667 & n.267 (collecting cases); *see, e.g., Arizona*, 567 U.S. at 409 ("Policies pertaining to the entry of" noncitizens "are entrusted exclusively to Congress."); *Plyler v. Doe*, 457 U.S. 202, 228 n.23 (1982) ("[T]he State has no direct interest in controlling entry into this country, that interest being one reserved by the Constitution to the Federal Government[.]"); *Chy Lung v. Freeman*,  92 U.S. 275, 280 (1875) (similar); *see* Appx.0216-17.

Moreover, here Congress has exercised that exclusive authority by establishing "a comprehensive framework to identify *who* may enter, *how* they may enter, *where* they may enter, and *what* penalties apply for those who enter unlawfully." *Texas*, 144 F.4th at 669 (collecting citations) (footnotes omitted). Congress has criminalized entry and reentry between ports of entry, 8 U.S.C. §§ 1325, 1326, as well as efforts to assist or facilitate entry between ports, *id.* §§ 1323, 1324, 1327, 1328, 1329. It has also provided a detailed set of standards and procedures for when individuals who enter without inspection may be arrested and detained by federal officials. *See, e.g.*, *id.* §§ 1225(b), 1226(a)-(c), 1182(d)(5)(A). At the same time, Congress recognized that some people who enter unlawfully—such as victims of trafficking, refugees, and close relatives of U.S. citizens—should be permitted to stay, obtain lawful status, and make their residence permanent. *See, e.g.*, *id.* §§ 1101(a)(15)(T), (U), 1158(a)(1), (d), 1182(a)(6)(A)(ii), 1255(l), (m), 1229b(b). Likewise, there is a comprehensive federal scheme addressing who may be removed, what procedures apply to removal, and to which countries they may be removed. *See Texas*, 144 F.4th at 667, 669-70, 680; *Iowa*, 157 F.4th at 924-25. This all represents "a 'framework of regulation so pervasive that Congress left no room for the States to supplement it.'" Appx.0220 (quoting *Arizona*, 567 U.S. at 399).

7

Defendant cannot deny that the federal interest here is dominant, nor that the statutory regime is pervasive. Indeed, all the reasons the Supreme Court gave for finding the noncitizen registration provision in *Arizona* field preempted "appl[y] with equal force to the Texas laws regarding entry and removal." *Texas*, 144 F.4th at 676; *see* Mot. 15 n.4 (acknowledging SB4 criminalizes reentry even with federal permission); *Arizona*, 567 U.S. at 403 (such conflicts "simply underscore the reason for field preemption"). And the regulation of entry and removal is, if anything, more uniquely federal than registration, as it is "inherent in [the] sovereignty" of the United States as a nation. *Nishimura Ekiu v. United States*, 142 U.S. 651, 659 (1892); *see Chy Lung*, 92 U.S. at 280 (external sovereign power "belongs solely to the national government"); *Fong Yue Ting v. United States*, 149 U.S. 698, 713 (1893) (same for "power to exclude or to expel aliens"); *United States v. Curtiss-Wright Exp. Corp.*, 299 U.S. 304, 316-18 (1936); Appx.0217-20, 0223.

Defendant offers three responses, but none has merit.

*First*, despite the dominant federal interest, he argues that a presumption against preemption should apply, citing *Mayor of New York v. Miln*, 36 U.S. 102, 132-33 (1837), to suggest immigration regulation is "historically" a state power, Mot. 9. But *Miln* was severely limited in *Henderson v. Mayor of City of New York*, 92 U.S. 259, 269-70 (1875), which, along with its companion case, *Chy Lung*, 92 U.S. 275, definitively rejected state regulation of immigration. Whatever might

have been true in 1837, 150 years of history firmly rejects any presumption against preemption given the extraordinary "history of significant federal presence" when it comes to entry and removal. *United States v. Locke*, 529 U.S. 89, 108 (2000) (rejecting presumption); *see* Appx.0222-23. Accordingly, every court to consider Texas's argument has rightly rejected it. *See Iowa*, 157 F.4th at 919 (explaining "immigration is not a traditional subject of state regulation"); *United States v. Alabama*, 691 F.3d 1269, 1296 (11th Cir. 2012) (no "presumption against preemption applies" to an "attempt to regulate immigration"); *Lozano v. City of Hazleton*, 724 F.3d 297, 314 n.23 (3d Cir. 2013) (similar); *Texas*, 144 F.4th at 675. Even if a presumption applied, it would be overcome here. Appx.0223.

*Second*, Defendant argues that the "Supreme Court has never defined a field [as] abstractly" as entry and removal. Mot. 10. But that field is no more abstract than the fields the Court has recognized, like noncitizen registration or nuclear safety (discussed *infra*). To the contrary, regulation of entry and removal is precisely what the Court has long held to be exclusively federal business inherent in the Nation's sovereignty. *See supra*. Dismissing "this fundamental axiom," *Texas*, 144 F.4th at 667-68, as merely "some brooding federal interest," Mot. 10, does not make it so.

*Third*, Defendant contends (at 10-11) that the field of entry and removal cannot be preempted because federal law permits opportunities for state officers to

cooperate with *federal* immigration enforcement "in specific, limited circumstances." *Arizona*, 567 U.S. at 410. That misapprehends field preemption. In *Pacific Gas & Electric Co. v. State Energy Research Conservation & Development Commission*, for example, Congress had permitted state regulation of various matters connected to nuclear safety, including allowing "agreements" under which States would assume "regulatory authority over certain nuclear materials under limited conditions," 461 U.S. 190, 209 & n.20 (1983), and "specifically authoriz[ing]" States to regulate radioactive air pollutants, *id.* at 212 n.25. Yet the Court rejected the argument that field preemption was therefore inapplicable and "State safety regulation" would be "preempted only when it conflicts with federal law." *Id*. at 212. "Rather, the federal government has occupied the entire field of nuclear safety concerns, *except the limited powers expressly ceded to the states*." *Id.* (emphasis added).

So too, here. Although Congress has "expressly" permitted certain "limited powers" to State officers, such as to make immigration arrests under federal supervision and pursuant to federally authorized "agreements," *id*. at 212, 209, nothing in federal law remotely approaches "a grant of authority to a state to enact a statute making it a state crime to be unlawfully present," *Texas*, 144 F.4th at 683; *see id.* at 676 (rebutting the specific statutes Defendant cites); *see also, e.g.*, *Kurns v. R.R. Friction Prods. Corp.*, 565 U.S. 625, 633 (2012) (field preemptive law

10

allowed limited state role in "interstitial areas of railroad safety"); *Locke*, 529 U.S. at 112 (similar, acknowledging certain permissible "[l]ocal rules" in preempted field).

For similar reasons, Defendant's reliance on *Arizona*'s analysis of other provisions misses the mark. Mot. 10-11. Where Congress has granted specific permission to states to operate (as it may under *Pacific Gas*), the question *whether* states have hewed to those limits is a conflict, not field, preemption analysis. *See Arizona*, 567 U.S. at 412, 414 (upholding provision that could be read to require only "a status check" with ICE, and explaining that federal law specifically authorized such checks); *id*. at 410 (holding that the state had overstretched the limited statutory permission to cooperate).[3] Here, Texas legislated in the quintessentially federal field of entry and removal, and does not even attempt to claim that legislation is authorized by the "limited circumstances in which state officers may perform the functions of an immigration officer." *Id*. at 408. It is therefore field preempted.

---

[3] The Court's analysis of Section 5(C) is further afield. That provision addressed employment of noncitizens, a distinct arena in which the Court has recognized a role for states. *See De Canas v. Bica*, 424 U.S. 351, 354-55 (1976) (emphasizing that the "[p]ower to regulate immigration is unquestionably a federal power" but upholding state employment law that had a "purely speculative and indirect impact on immigration"); *Chamber of Com. of U.S. v. Whiting*, 563 U.S. 582, 604 (2011) (similar); *see Arizona*, 567 U.S. at 404 (discussing prior precedent, but finding congressional changes conflict preempted Section 5(C)).

2. As the district court held, SB4 is also conflict preempted. Appx.0232-40; *see Iowa*, 157 F.4th at 920-27 (concluding that "every application of" a statute modeled on SB4 "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress"). As a panel of this Court observed, "conflicts abound between [SB4] and a number of federal laws" and SB4 "runs roughshod" over Congress's immigration scheme. *Texas*, 144 F.4th at 678, 686.

Congress struck a balance in the immigration laws, making crossing the border unlawfully a crime, and rendering those who do so removable, but also providing for various circumstances in which unlawful entry might be outweighed by other important federal interests. *See* 8 U.S.C. § 1158(a)(1) (asylum available "whether or not" the noncitizen arrives "at a designated port of arrival"); *see also id.* §§ 1101(a)(15)(U), (T), 1182(a)(6)(A)(ii), (d)(13), (14), 1229b(b) (various forms of relief from removal available even if one enters the country unlawfully, including for victims of crime or trafficking). Recognizing that "[t]he equities of an individual case may turn on many factors, including whether the alien has children born in the United States, long ties to the community, or a record of distinguished military service," as well as "policy choices that bear on this Nation's international relations," Congress vested the federal executive with the "broad discretion" that is "[a] principal feature of the [federal] removal system." *Arizona*, 567 U.S. at 396. Fundamentally, Texas's effort to hand the most punitive of the tools Congress

12

created to *state* police, prosecutors, and magistrate judges, stands as "an obstacle to the exercise of the discretion that Congress gives federal officials charged with enforcing federal immigration law." *Iowa*, 157 F.4th at 921 (collecting cases recognizing broad federal discretion).

Defendant emphasizes that SB4's provisions largely track federal law and contends that "'parallel state regulation' does not raise conflict preemption concerns." Mot. 13. That may be true in many other circumstances, "[b]ut not here." *Iowa*, 157 F.4th at 922 (rejecting this argument). As in *Crosby v. National Foreign Trade Council*, here "Congress clearly intended the federal Act to provide the [Executive] with flexible and effective authority." 530 U.S. 363, 374 (2000). And, just as in that case, Texas's "unyielding application" of criminal sanctions whenever it sees fit "undermines the [Executive's] intended statutory authority by making it impossible" for the federal executive to chart the course it thinks best in particular circumstances. *Id*. at 377. Moreover, as the Eighth Circuit recently observed, like the foreign policy regulation at issue in *Crosby*, "[i]mmigration is not a traditional subject of state regulation." *Iowa*, 157 F.4th at 919 (contrasting this Court's precedent addressing the state's "traditional prerogative to police drug safety") (quoting *Zyla Life Scis., LLC v. Wells Pharma of Houston, LLC*, 134 F.4th 326, 328 (5th Cir. 2025) (cited by Defendant)).

Defendant invokes the views expressed by the Department of Justice in an amicus brief supporting parts of SB4. Mot. 13, 15. "But the Supremacy Clause gives priority to 'the Laws of the United States,' not the criminal law enforcement priorities or preferences of federal officers." *Iowa*, 157 F.4th at 924 (citation modified) (rejecting reliance on similar amicus brief). "Congress gives discretion to federal officials in enforcing federal immigration law, with limited opportunities for the involvement of states." *Id.* "Because the Act conflicts with the discretion that Congress gives to federal officials, the Act is preempted, even if federal officials support the Act." *Id.*; *see Texas*, 144 F.4th at 681 (provisions "rob every administration of the very discretion in alien removal matters that Congress granted to the federal executive and not to the States"). Nor are the Department's "views" on the meaning of federal statutes even persuasive here, particularly given they represent an abrupt reversal from the positions it took previously in challenges to SB4 and related laws—a fact it never explains. *Cf. Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 386 (2024) (affording "respect" to "consistent" views).

Texas posits that SB4 could be legally applied to a person "who has already been adjudicated" to have illegally reentered. Mot. 12. That ignores *Arizona*'s fundamental teaching that a state may not "achieve its own immigration policy" by undertaking "unilateral state action" in immigration enforcement. *Arizona*, 567 U.S. at 408, 410. Section 6—authorizing state immigration arrests—was conflict

14

preempted because it allowed "unilateral state action" that usurped the federal government's ability to exercise discretion. *Id*. at 407-10. Section 3, by claiming the "independent authority to prosecute registration violations," would similarly "diminish[] the Federal Government's control over enforcement" and "frustrate federal policies." *Id*. at 401-02 (citation modified). And with regard to Section 2(B), the Court explained that "it would disrupt the federal framework" to allow state detention "for possible unlawful presence without federal direction and supervision," but the Court upheld the provision because it could be read to merely authorize communication with federal authorities. *Id*. at 413-14. If state officers may not unilaterally detain or arrest for immigration violations, they obviously cannot unilaterally detain, arrest, prosecute, sentence, imprison, and order removal for such violations. *See id.* at 408.

Nor would it matter, as Defendant suggests, if federal officers "encourage[] Texas to arrest and charge" people under such a state law. Mot. 12. *Congress* decides what powers state officers may exercise, and the limitations it imposes apply even if federal agents disagree with that choice. And much the same could have been said in *Arizona*, where the Court struck down Section 6 on its face for permitting unilateral arrests, even while Justice Alito argued that there were "plenty" of permissible applications of the law. *See Texas*, 144 F.4th at 663 n.234. The majority held otherwise: "By authorizing state officers to decide whether an

15

alien should be detained for being removable, § 6 violates the principle that the removal process is entrusted to the discretion of the Federal Government." *Arizona*, 567 U.S. at 409. So too, here.[4]

## III. PROVISIONAL CLASS CERTIFICATION WAS PROPER.

The district court did not abuse its discretion in provisionally certifying the class in conjunction with its issuance of the preliminary injunction. *Angell v. GEICO Advantage Ins. Co.*, 67 F.4th 727, 736 (5th Cir. 2023). "An abuse of discretion occurs only when all reasonable persons would reject the view of the district court." *Id.* (citation modified). "Implicit in this deferential standard is a recognition of the essentially factual basis of the certification inquiry and of the district court's inherent power to manage and control pending litigation." *Id*.

In his motion, Defendant does not contest *any* of the explicit requirements of Rule 23. For good reason: Plaintiffs established each of the requirements of Rule 23(a), and Rule 23(b)(2) was designed for just this kind of civil rights litigation. Appx.0248-52. The two arguments Defendant does make each lack merit.

*First*, Defendant suggests that because class certification was "expedited," it was not sufficiently "rigorous." Mot. 16-17. That does not follow. "[P]laintiffs

---

[4] Defendant likewise suggests SB4 is lawful when a noncitizen "agree[s]" to an order. Mot. 12-13. But, as already explained, these supposedly voluntary choices are predicated on Texas dictating that the person must leave the country either way, on pain of decades in prison. A starker conflict is hard to imagine.

who challenge the legality of" governmental "action and request preliminary injunctive relief may sometimes seek to proceed by class action under [Rule] 23(b)(2) and ask a court to award preliminary classwide relief that may, for example, be statewide . . . ." *Trump v. CASA, Inc.,* 606 U.S. 831, 869 (2025) (Kavanaugh, J., concurring). Indeed, "[c]ourts routinely grant provisional class certification for purposes of entering injunctive relief." *Idaho Org. of Res. Councils*, 780 F. Supp. 3d at 1046; *see, e.g.*, *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012); *Afghan & Iraqi Allies v. Blinken*, 103 F.4th 807, 812 (D.C. Cir. 2024) (noting provisional certification); *Escobar Molina v. U.S. Dep't of Homeland Sec.*, 811 F. Supp. 3d 1, 54 (D.D.C. 2025) (cited by Defendant, granting provisional certification). That includes several cases challenging laws similar to SB4. *See Idaho Org. of Res. Councils*, 780 F. Supp. 3d at 1052; *Fla. Immigrant Coal.*, 780 F. Supp. 3d at 1270; *Padres Unidos de Tulsa*, 783 F. Supp. 3d at 1354. Where the application of Rule 23 is straightforward, the certification process can appropriately "proceed quickly." David Marcus, *The Class Action After* Trump v. Casa, 72 UCLA L. Rev. Discourse 2, 18 (2025) (addressing arguments against provisional certification).[5] That is the case here—as evidenced

---

[5] The term "provisional" is formally "redundant." *Id*. at 20; *see Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 988 (11th Cir. 2016) ("the certification of a class is always provisional"). The district court included it to underscore that it was prepared to revisit class certification at later stages. Appx.0256.

by Defendant's failure to contest *any* of Rule 23's textual requirements in his motion.[6]

Defendant suggests that the district court treated Rule 23 as a "mere pleading standard." Mot. 16. But that is baseless. Plaintiffs supported their motion with declarations. Appx.0044-53. When Defendant questioned that evidence and sought expedited discovery before the hearing, Dkt. 23, the district court granted the request over Plaintiffs' objection, ordering depositions and paper discovery on the precise timeline Defendant had requested, Dkt. 23; *see* Dkt. 30 at 3 (requesting deferral of class certification "until [the requested] discovery can be conducted"). The resulting discovery further bolstered Plaintiffs' showing on the requirements of Rule 23. *See* Dkt. 48, 53. Defendant contends this evidence is not "adequate," Mot. 16, but his conclusory assertion identifies no factual finding he claims to be unsupported—much less establishes any abuse of discretion. *Angell*, 67 F.4th at 736.[7]

---

[6] *Dickinson v. Trump*, No. 26-1609, 2026 WL 1133353, at *9 (9th Cir. Apr. 27, 2026), on which Defendant relies, Mot. 16-17, is no help to him. That case rejected commonality given what the court deemed the fact-specific nature of class members' claims; here, by contrast, Defendant did not even contest commonality below. Appx.0249.

[7] In a footnote, Defendant suggests he was denied the "opportunity" to address class certification or discuss the deposition testimony. Mot. 16 n.6. That is wrong. Plaintiffs' counsel dedicated the bulk of his presentation to class issues. Appx.0277-286. In response, during the nearly two-and-a-half-hour hearing, Defendant's counsel chose to focus almost entirely on merits issues, without addressing the class

*Second*, Defendant argues that the certified class is not ascertainable. Mot. 17. This Court has applied this implicit requirement to Rule 23(b)(2) classes, *see Braidwood Mgmt., Inc. v. EEOC*, 70 F.4th 914, 933 n.36 (5th Cir. 2023), but it is a notably low bar in the context of such classes. The Court rejects certification "where the class definition depends on the class members' state of mind," but that concern is not presented here. *Id*. at 235 (rejecting class of those who oppose certain behavior). Likewise, it rejects classes that "are impermissibly vague in practice," such as those "involved in a 'peace movement.'" *Id*. at 933 n.36, 935 (quoting *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970)). There is nothing impermissibly vague in practice about this class; indeed, its terms track the State's own statute. *See* Appx.0253. For example, if Defendant proposes to enforce the reentry crime against an individual, then by necessity he believes that individual is subject to the statute, and therefore a class member.

Defendant wrongly suggests that ascertainability requires Plaintiffs to be able to identify "all" class members. Mot. 17. That may be required in classes, such as under Rule 23(b)(3), "[w]here notice and opt-out rights" are at issue. *In re Monumental Life Ins. Co.*, 365 F.3d 408, 413 (5th Cir. 2004); *see Cole v. City of Memphis*, 839 F.3d 530, 541 (6th Cir. 2016). But Rule 23(b)(2) was designed to

motion. Appx.0297-316; Appx.0334-0364. That was counsel's choice, not the district court's. In any event, the Court "fully considered" the complete deposition transcripts, as well as Defendant's various filings. *See* Appx.0255, 0364.

address classes "whose members are *incapable of specific enumeration*." *Carpenter v. Davis*, 424 F.2d 257, 260 (5th Cir. 1970) (emphasis added). For example, classes including future members are common and have been specifically authorized by this Court. *See id*.; *Bradford v. Sears, Roebuck & Co.*, 673 F.2d 792, 795 (5th Cir. 1982); *County of Riverside v. McLaughlin*, 500 U.S. 44, 49 (1991). Accordingly, "[i]t is not necessary that the members of the class be so clearly identified that any member can be presently ascertained." *Carpenter*, 424 F.2d at 260.

## IV.    THE EQUITIES DO NOT SUPPORT A STAY.

"Texas will not suffer sufficient irreparable injury to warrant a stay." Appx.0259. "Federal officials of course already enforce immigration law—and many [Texas] law-enforcement agencies have entered into agreements with the Department of Homeland Security that allow local police to enforce federal immigration law." *FLIC*, 2025 WL 1625385, at *6; *see* Tex. Gov't Code § 753.051. The availability of such cooperation with the federal government thus "ameliorates [Defendant's] concern." *Iowa*, 157 F.4th at 929.[8] And, of course, the "[f]rustration of federal statutes and prerogatives [is] not in the public interest." *Alabama*, 691

---

[8] Defendant waited a week before seeking a stay, underscoring that, despite the injunction, the State has many other tools available to address its policy concerns while the appeal proceeds.

F.3d at 1301. Here, "SB 4 threatens the fundamental notion that the United States must regulate immigration with one voice." Appx.0260.

The harm to plaintiffs and the public outweighs any to the State. "Plaintiffs and provisional class members are at risk of suffering grave, irreparable harm were SB 4 to take effect in the form of arrests, prosecutions, and removals under a likely unlawful statute." *Id.* L.M.L. is the primary breadwinner and caretaker for his family due to his wife's diabetes and high blood pressure, which make it difficult for her to work. Appx.0046 ¶ 8. K.G.S. supports her two children, one of whom is a U.S. citizen. Appx.0050 ¶ 3. Both drive on a daily basis and regularly see DPS agents. Dkt. 48-2 at 7; 48-3 at 7; 53-1 at 9:18-23. Defendant suggests that SB4 does "not materially change their circumstances" given the possibility of *federal* enforcement, and notes that federal immigration status is not itself a defense to federal prosecution. Mot. 18. But that just highlights that SB4 empowers *state* arrest and prosecution even where federal officials have decided to forego prosecution in favor of affording discretionary relief and status—as with L.M.L.'s already granted lawful permanent residence.

"[T]he threatened enforcement of [this] preempted law" against the plaintiffs and other class members constitutes irreparable injury. *Villas at Parkside Partners v. City of Farmers Branch*, 577 F. Supp. 2d 858, 878 (N.D. Tex. 2008), *aff'd* 726 F.3d 524 (5th Cir. 2013) (en banc); *see also Iowa*, 157 F.4th at 928 (similar); *Ga.*

*Latino All. for Human Rts. v. Governor of Ga.*, 691 F.3d 1250, 1269 (11th Cir. 2012) (similar); *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013) (similar). "That is particularly true as to SB 4," which authorizes state removal orders into Mexico, exposing individuals "to death, torture, and rape." Appx.0247 (citing record); *see Nken v. Holder*, 556 U.S. 418, 436 (2009) ("[T]here is a public interest in preventing [noncitizens] from being wrongfully removed, particularly to countries where they are likely to face substantial harm.").

## CONCLUSION

The Court should deny a stay.

Dated: May 23, 2026

David A. Donatti
(TX Bar No. 24097612)
Adriana C. Piñon
(TX Bar No. 24089768)
Carolina Rivera Nelson (TX Bar No. 24132741)
AMERICAN CIVIL LIBERTIES UNION OF TEXAS
P.O. Box 8306
Houston, TX 77288
Telephone: (713) 942-8146
Facsimile: (713) 942-8966
ddonatti@aclutx.org
apinon@aclutx.org
criveranelson@aclutx.org

Daniel Hatoum
(TX Bar No. 24099136)
TEXAS CIVIL RIGHTS PROJECT
P.O. Box 219
Alamo, TX 78516
(956) 787-8171 ext. 208
daniel@texascivilrightsproject.org

Kate Gibson Kumar
(TX Bar No. 24137588)
Daniel Woodward
(TX Bar No. 24138347)
TEXAS CIVIL RIGHTS PROJECT
P.O. Box 17757
Austin, TX 78760
(512) 474-5073 ext. 225
kate@texascivilrightsproject.org
danny@texascivilrightsproject.org

Dustin Rynders
(TX Bar No. 24048005)
TEXAS CIVIL RIGHTS PROJECT

Respectfully Submitted,

*/s/ Cody Wofsy*
Cody Wofsy
Spencer Amdur
Hannah Steinberg
AMERICAN CIVIL LIBERTIES UNION FOUNDATION IMMIGRANTS' RIGHTS PROJECT
425 California Street, 7th Floor
San Francisco, CA 94104
T: (415) 343-0770
F: (332) 220-1702
cwofsy@aclu.org
samdur@aclu.org
hsteinberg@aclu.org

Kathryn Huddleston* (TX Bar No. 24121679)
AMERICAN CIVIL LIBERTIES UNION FOUNDATION IMMIGRANTS' RIGHTS PROJECT
915 15th Street, NW, 7th Floor
Washington, DC 20005
T: (212) 549-2500
khuddleston@aclu.org

Omar Jadwat
Lee Gelernt
Grace Choi
AMERICAN CIVIL LIBERTIES UNION FOUNDATION IMMIGRANTS' RIGHTS PROJECT
125 Broad St., 18th Floor
New York, NY 10004
T: (212) 549-2660
ojadwat@aclu.org
lgelernt@aclu.org
gchoi@aclu.org

PO Box 1108
Houston, TX 77251-1108
dustin@texascivilrightsproject.org

*Barred in Texas and Arizona, not barred in the District of Columbia, practice supervised by a member of the D.C. Bar

For Plaintiffs-Appellees

## CERTIFICATE OF COMPLIANCE

I certify that this document complies with the type-volume limitation of Rule 27(d)(2) because it contains no more than 5187 words, and complies with the typeface and style requirements of Rule 32(a)(5) and (a)(6) because it was prepared in Microsoft Word using 14-point Times New Roman typeface.

*/s/ Cody Wofsy*
Cody Wofsy

## CERTIFICATE OF SERVICE

I certify that, on May 23, 2026, a true and correct copy of this document was transmitted to the Clerk of the United States Court of Appeals for the Fifth Circuit via the Court's CM/ECF document filing system, and on all counsel of record.

*/s/ Cody Wofsy*
Cody Wofsy