No. 26-50418

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

L.M.L., ON BEHALF OF THEMSELVES AND ALL THOSE SIMILARLY SITUATED;
K.G.S., ON BEHALF OF THEMSELVES AND ALL THOSE SIMILARLY SITUATED,

*Plaintiffs-Appellees,*

v.

FREEMAN F. MARTIN, IN HIS OFFICIAL CAPACITY AS DIRECTOR OF TEXAS
DEPARTMENT OF PUBLIC SAFETY,

*Defendants-Appellants.*

On appeal from the United States District Court
for the Western District of Texas

# BRIEF FOR THE UNITED STATES AS *AMICUS CURIAE*
# SUPPORTING APPELLANT'S MOTION FOR STAY PENDING APPEAL

BRETT A. SHUMATE
*Assistant Attorney General*

ERIC McARTHUR
*Deputy Assistant Attorney General*

BENJAMIN HAYES
*Senior Counsel to the Assistant Attorney General*
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530
(202) 514-8214

## CERTIFICATE OF INTERESTED PARTIES

*Amicus Curiae* is a governmental entity.   Under Fifth Circuit Rule 28.2.1, a certificate of interested parties is not required.

# TABLE OF CONTENTS

INTEREST OF AMICUS CURIAE.................................................................1

INTRODUCTION AND SUMMARY OF ARGUMENT ...........................................1

ARGUMENT .................................................................................................2

    I.      Senate Bill 4 is not field preempted.................................3

    II.    Senate Bill 4 is not facially conflict preempted. ..........................6

CONCLUSION .............................................................................................10

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases:**                                                                                    **Page(s)**

*Arizona v. United States,*
   567 U.S. 387 (2012) ................................................................... 4, 5, 6, 7, 9, 10

*California v. Zook,*
   336 U.S. 725 (1949) ................................................................................... 8

*Chamber of Com. of U.S. v. Whiting,*
   563 U.S. 582 (2011) ................................................................................... 7

*DeCanas v. Bica,*
   424 U.S. 351 (1976) ............................................................................... 3, 4

*Gamble v. United States,*
   587 U.S. 678 (2019) ................................................................................... 7

*Gilbert v. Minnesota,*
   254 U.S. 325 (1920) ................................................................................... 8

*Hines v. Davidowitz,*
   312 U.S. 52 (1941) ..................................................................................... 4

*Kansas v. Garcia,*
   589 U.S. 191 (2020) .......................................................... 2, 3, 4, 6, 7, 8, 10

*Moody v. NetChoice, LLC,*
   603 U.S. 707 (2024) ................................................................................... 9

*Plyler v. Doe,*
   457 U.S. 202 (1982) ................................................................................... 8

*Puerto Rico Dep't of Consumer Affs. v. Isla Petrol. Corp.,*
   485 U.S. 495 (1988) ................................................................................... 3

*R.J. Reynolds Tobacco Co. v. Durham Cnty.,*
   479 U.S. 130 (1986) ............................................................................ 2, 3, 4

*United States v. Salerno,*
   481 U.S. 739 (1987) ................................................................................... 9

iii

*United States v. Texas,*
  144 F.4th 632 (5th Cir. 2025) ..................................................................5, 9

*United States v. Texas,*
  173 F.4th 659 (5th Cir. 2026) ..............................................................1, 2, 7, 8

*Va. Uranium, Inc. v. Warren,*
  587 U.S. 761 (2019) ..............................................................................2, 3, 6, 10

*Wash. State Grange v. Wash. State Republican Party,*
  552 U.S. 442 (2008) ..................................................................................2, 8, 9

*Wis. Dep't of Industry, Lab. & Hum. Rels. v. Gould Inc.,*
  475 U.S. 282 (1986) ...........................................................................................9

**Constitutional Provision:**

U.S. Const. art. VI ...........................................................................................2

**Statutes:**

8 U.S.C. §1302 ....................................................................................................4

8 U.S.C. §1303(a) ...............................................................................................5

8 U.S.C. §1304 ....................................................................................................5

8 U.S.C. §1305 ....................................................................................................5

8 U.S.C. §1306 ....................................................................................................5

8 U.S.C. §1326(a) ...........................................................................................2, 4

8 U.S.C. §1326(a)(2)(A) .....................................................................................8

Tex. Code Crim. Proc. art. 5B.003 ..................................................................9

**Other Authority:**

Proclamation 10888, *Guarenteeing the States Protection Against Invasion* ...............................1

## INTEREST OF AMICUS CURIAE

The United States is responsible for the enforcement of the Nation's immigration laws. Accordingly, the United States has an interest in ensuring that the doctrines of preemption are applied in a manner that preserves the federal government's primacy over the areas that are within its constitutional authority, including immigration, while preserving the ability of States to adopt complementary legislation that advances the federal policy. The United States submits this amicus brief in support of Appellant's motion for a stay pending appeal.

## INTRODUCTION AND SUMMARY OF ARGUMENT

"This case concerns whether the State of Texas, exercising its historic, sovereign police powers, can legislatively protect its citizens from a surge of illegal aliens in response to an unprecedented border crisis and a declared invasion." *United States v. Texas*, 173 F.4th 659, 662 (5th Cir. 2026) (en banc) ("*Texas En Banc*").

The day he took office, President Trump issued Proclamation 10888, *Guaranteeing the States Protection Against Invasion*, 90 Fed. Reg. 8333 (Jan. 20, 2025), to redress the invasion at the southwest border and the "jarring … human toll" it was inflicting. *Texas En Banc*, 173 F.4th at 662. Prior to January 20, 2025, however, Texas was left to fend for itself, and so it enacted Senate Bill 4 as an exercise of its "historic, sovereign police powers" to "legislatively protect its citizens." *Id.* That law makes it a state crime for an alien to enter, attempt to enter, or be found in Texas after having reentered the United States in violation of the Immigration and Nationality Act's (INA) prohibition on illegal

1

reentry, 8 U.S.C. §1326(a). Although Senate Bill 4's reentry prohibition mirrors the federal prohibition on illegal reentry, the district court facially enjoined its enforcement—both as a matter of field and conflict preemption.

The Supreme Court has made clear that field preemption arises only in the "rare case[]" where "Congress [has] 'legislated so comprehensively' in a particular field that it 'left no room for supplementary state legislation.'" *Kansas v. Garcia*, 589 U.S. 191, 208 (2020) (quoting *R.J. Reynolds Tobacco Co. v. Durham Cnty.*, 479 U.S. 130, 140 (1986)). The INA's prohibition on unauthorized reentry does not foreclose that kind of complementary state legislation and a "brooding federal interest" in the treatment of illegal aliens has no preemptive effect. *Va. Uranium, Inc. v. Warren*, 587 U.S. 761, 767 (2019) (plurality opinion).

Senate Bill 4 also is not conflict preempted. The reentry prohibition "tracks federal law." *Texas En Banc*, 173 F.4th at 663. No different from a state criminal law that borrows from a federal statute to punish the same wrongdoing, Senate Bill 4 merely adds a state-level punishment for what federal law already proscribes. At a minimum, Senate Bill 4 does not conflict with federal law "in *all* of its applications." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008).

This Court should grant a stay pending appeal.

## ARGUMENT

The Supremacy Clause provides that the Constitution, federal statutes, and treaties constitute "the supreme Law of the Land." U.S. Const. art. VI, cl. 2. Its

2

command is simple: if a state law and federal law conflict, the federal law wins. *Kansas*, 589 U.S. at 202. "In all cases," preemption "must stem from either the Constitution itself or a valid statute enacted by Congress." *Id.* "There is no federal preemption *in vacuo*," *id.* (quoting *Puerto Rico Dep't of Consumer Affs. v. Isla Petrol. Corp.*, 485 U.S. 495, 503 (1988)), and "[i]nvoking some brooding federal interest or appealing to a judicial policy preference should never be enough to win preemption of a state law," *Va. Uranium, Inc.*, 587 U.S. at 767 (plurality opinion).

The district court held that Senate Bill 4's reentry provision is facially field and conflict preempted. Neither theory has merit.[1]

## I.    Senate Bill 4 is not field preempted.

Senate Bill 4's reentry provision is not field preempted. That theory of preemption applies only in the "rare case[]" where "Congress [has] 'legislated so comprehensively' in a particular field that it 'left no room for supplementary state legislation.'" *Kansas*, 589 U.S. at 208 (quoting *R.J. Reynolds Tobacco Co.*, 479 U.S. at 140). "Only a demonstration that complete ouster of state power[,] including state power to promulgate laws not in conflict with federal laws[,] was the clear and manifest purpose of Congress" will justify a finding of field preemption. *DeCanas v. Bica*, 424 U.S. 351, 357 (1976) (quotation marks omitted).

---

[1] The United States does not address here the portions of Senate Bill 4 that provide for judicial orders requiring illegal aliens who violate its entry/reentry prohibitions to leave the United States.

**A.**     The regulation of those unlawfully present in the United States is not one of those rare areas in which Congress intended to occupy the field to the exclusion of state legislation that supplements and reinforces federal law.  The federal prohibition on reentry is contained in a single statutory subsection—indeed, in a single *sentence* in a single subsection.  *See* 8 U.S.C. §1326(a).  Its prohibitions are not complex; nor does the provision contain carefully crafted exceptions.  *See id.*  Such general prohibitions are not the kind of "comprehensive[]" regulatory scheme, *Kansas*, 589 U.S. at 208 (quoting *R.J. Reynolds Tobacco Co.*, 479 U.S. at 140), sufficient to evince a "clear and manifest purpose" by Congress to effect a "complete ouster" of complementary state law, *DeCanas*, 424 U.S. at 357 (quotation marks omitted).  If they were, then virtually any federal prohibition would give rise to field preemption, and the Supreme Court's directive that field preemption may be found only in the "rare case[]" would be an empty promise.

**B.**     The Supreme Court's decision in *Arizona v. United States*, 567 U.S. 387 (2012), does not support field preemption here.  *Contra* Doc. 55 at 33 ("Order").  There, the Court applied its decades-old precedent in *Hines v. Davidowitz*, 312 U.S. 52 (1941), to an Arizona law that "add[ed] a state-law penalty" for failing to comply with the INA's registration requirement.  *Arizona*, 567 U.S. at 400.  Following that longstanding precedent, the Court held that the Arizona registration scheme was field preempted.  In addition to the registration requirement itself, *see* 8 U.S.C. §1302, the INA's registration provisions:  (1) authorize the Attorney General to "prescribe special regulations and forms" to govern the registration of fingerprinting of aliens holding certain professions,

4

*id.* §1303(a); (2) specify items that must be included in those forms, provide for the confidentiality of registration forms and fingerprints, impose an oath requirement, provide for the issuance of a "certificate of alien registration" for aliens successfully registered, and require that the card be carried "at all times," *id.* §1304; (3) govern notification of a change of address, *id.* §1305; and (4) impose penalties for the failure to comply with the registration requirements and other offenses, *id.* §1306. Consistent with *Hines*, the Supreme Court concluded that these multiple interlocking provisions "provide a full set of standards governing alien registration" that "occup[y] the field of alien registration," such that "even complementary state regulation is impermissible." *Arizona*, 567 U.S. at 401. The INA's alien registration provisions are far more complex and comprehensive than the straightforward reentry provision. *Supra*, p. 4.

C.    None of the reasons offered by the district court alter this conclusion. The district court reasoned that Senate Bill 4 is field preempted because the federal government "has a dominant and supreme interest in the field of immigration," Order 36, and Congress has enacted a "pervasive" scheme "regulating immigration," *id.* at 37. That conception of field preemption is far too expansive. "There is no field preemption of all of immigration law. If there were, *Arizona* … would have been far easier." *United States v. Texas*, 144 F.4th 632, 724 (5th Cir. 2025) ("*Texas Merits Panel*") (Oldham, J., dissenting). The Court would have simply declared the entire field of immigration preempted and invalidated the Arizona law on that basis. It did not. Instead, the Court analyzed the *specific* "field of alien registration" and determined that "[t]he federal

5

statutory directives provide a full set of standards governing alien registration." *Arizona*, 567 U.S. at 401. Similarly, *Kansas* held that a state law making it a crime to commit identify theft was not field preempted as-applied to aliens. 589 U.S. at 195, 208-10. In conducting the field preemption analysis, the Court recognized that it must "first identify the field" in which the law operated, and it then analyzed a narrowly defined "field relating to the federal employment verification system." *Id.* at 208.

Here, however, the district court did not purport to explain how the regulation of unlawful reentry in §1326(a) is sufficiently comprehensive to trigger field preemption; instead, the district court gave §1326(a) only passing attention in the context of listing numerous *other* statutes that address *other* issues. Order 38.

Separately, the district court reasoned that Senate Bill 4's regulation of unlawful reentry is field preempted because immigration generally is a federal prerogative and implicates key federal interests. Order 33-36. But implied preemption "must be grounded 'in the text and structure of the statute at issue,'" *Kansas*, 589 U.S. at 208; a "brooding federal interest" is "never … enough to win preemption of a state law." *Va. Uranium, Inc.*, 587 U.S. at 767 (plurality opinion). Again, if the federal government's dominant interest in immigration or the mere invocation of key federal interests sufficed for field preemption then *Arizona* would have been written differently.

## II.   Senate Bill 4 is not facially conflict preempted.

Senate Bill 4 also is not facially conflict preempted. A state law may "conflict with federal law" "where the challenged state law stands as an obstacle to the

6

accomplishment and execution of the full purposes and objectives of Congress." *Arizona*, 567 U.S. at 399 (quotation marks omitted). As with field preemption, conflict preemption "does not justify a 'freewheeling judicial inquiry into whether a state statute is in tension with federal objectives,'" as "such an endeavor would undercut the principle that it is Congress rather than the courts that pre-empts state law." *Chamber of Com. of U.S. v. Whiting*, 563 U.S. 582, 607 (2011) (plurality opinion) (quotation marks omitted).

**A.**    Senate Bill 4 does not conflict with the federal reentry statute. It does not authorize any conduct forbidden by federal law, but instead uses language borrowed nearly verbatim from the INA to prohibit conduct that parallels conduct prohibited by the INA. As the *en banc* Court recognized, Senate Bill 4's reentry prohibition "tracks federal law." *Texas En Banc*, 173 F.4th at 663.

The mere fact that Senate Bill 4 "overlap[s]" with federal law "does not even begin to make a case for conflict preemption." *Kansas*, 589 U.S. at 211-12. States generally are free to criminalize conduct also proscribed by Congress, and to attach additional penalties to those offenses. No one would doubt that states may adopt the elements of a federal criminal offense as their own and attach additional penalties for violations—a prohibition on felons possessing firearms, for example. *Cf. Gamble v. United States*, 587 U.S. 678 (2019). Laws targeting illegal immigration are no exception. The Supreme Court has said so explicitly: "Despite the exclusive federal control of this Nation's borders, we cannot conclude that the States are without any power to deter

the influx of persons entering the United States against federal law, and whose numbers might have a discernible impact on traditional state concerns." *Plyler v. Doe*, <u>457 U.S. 202, 228</u> n.23 (1982); *accord Gilbert v. Minnesota*, <u>254 U.S. 325, 331</u> (1920); *California v. Zook*, <u>336 U.S. 725, 735</u> (1949).

   **B.**   The district court reasoned that Senate Bill 4 interferes with the "discretion" of federal immigration authorities to "enforce[] [the] immigration laws." Order 51. That line of reasoning is foreclosed by *Kansas*: "[T]he possibility that federal enforcement priorities might be upset is not enough to provide a basis for preemption." <u>589 U.S. at 212</u>. Only federal *law* has preemptive effect—"the criminal law enforcement priorities or preferences of federal officers" do not. *Kansas*, <u>589 U.S. at 212</u>. Even were it otherwise, here the enforcement priorities of the United States and Texas now align. And even if some disagreement in priorities were to later arise in a particular case or context, that still would not render Senate Bill 4 in conflict with federal enforcement priorities "in *all* of its applications." *Wash. State Grange*, <u>552 U.S. at 449</u> (emphasis added).

   The district court also reasoned that Senate Bill 4 conflicts with §1326(a)'s allowance for reentry if "the Attorney General has expressly consented to such alien's reapplying for admission." <u>8 U.S.C. §1326(a)(2)(A)</u>; *see* Order 56. That is not a proper basis for a *facial* injunction. After all, "[b]ecause this case arrives as a pre-enforcement challenge, no state court has interpreted" the reentry provision. *Texas En Banc*, <u>173 F.4th at 663</u> n.8. "The pre-enforcement challenge comes at a cost: Since '[t]here is a

8

basic uncertainty about what the law means and how it will be enforced ... it would be inappropriate to assume [S.B. 4] will be construed in a way that creates conflict with federal law.'" *Id.* (quoting *Arizona*, 567 U.S. at 415). Regardless, while an alien may be able to bring a successful *as-applied* challenge to the extent his case turns on an exception to the federal reentry prohibition, identifying "one possible unconstitutional application here, and another there," *Texas Merits Panel*, 144 F.4th at 726 (Oldham, J., dissenting), falls far short of demonstrating that there are "'no set of circumstances exists under which the Act would be valid'" and the law is "unconstitutional in all of its applications." *Wash. State Grange*, 552 U.S. at 449 (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)); *see Moody v. NetChoice, LLC*, 603 U.S. 707, 723 (2024) (reaffirming "no set of circumstances" standard for all non-First Amendment cases). That same flaw underlies the district court's objection to the law's prohibition on "abat[ing] the prosecution" of an alien on "the basis that a federal determination regarding the immigration status of the defendant is pending or will be initiated." Tex. Code Crim. Proc. art. 5B.003; *see* Order 51-53.

Nor does conflict preemption arise because penalties under Senate Bill 4 "exceed those under federal law." Order 56. Although the Supreme Court has recognized that in some contexts, "[c]onflict is imminent whenever two separate remedies are brought to bear on the same activity," *Arizona*, 567 U.S. at 403 (quoting *Wis. Dep't of Industry, Lab. & Hum. Rels. v. Gould Inc.*, 475 U.S. 282, 286 (1986)), the Supreme Court did not, through that language, undermine the general rule that parallel federal and state

enforcement are permissible. Rather, the Court in *Arizona* thought that the differing penalties "underscore[d] the reason *for field preemption*," after having concluded that the INA established a "comprehensive scheme" to govern the field of alien registration. 567 U.S. at 400-03 (emphasis added). Where, as here, there is no "careful framework" governing illegal entry and reentry, *id.* at 402—and thus no field preemption, *supra*, pp. 3-6—a mere difference in penalties does not support conflict preemption.

Finally, the district court objected that Senate Bill 4 creates foreign policy concerns and "directly harm[s] the United States's relationship with Mexico." Order 55. That is not a basis for finding Senate Bill 4's reentry prohibition conflict preempted. After all, any application of criminal law to illegal aliens may affect sensitive foreign policy matters, but "implied preemption" "must be grounded 'in the text and structure of the statute at issue.'" *Kansas*, 589 U.S. at 208; a "brooding federal interest" is "never … enough to win preemption of a state law." *Va. Uranium, Inc.*, 587 U.S. at 767 (plurality opinion).

## CONCLUSION

The Court should enter a stay pending appeal.

10

Respectfully submitted,

BRETT A. SHUMATE
*Assistant Attorney General*

ERIC McARTHUR
*Deputy Assistant Attorney General*

BENJAMIN HAYES
*Senior Counsel to the Assistant Attorney General*
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530
(202) 514-8214

May 2026

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of <u>Federal Rule of Appellate Procedure 29(a)(5)</u> because it contains 2,592 words. This brief also complies with the typeface and type-style requirements of <u>Federal Rule of Appellate Procedure 32(a)(5)-(6)</u> because it was prepared using Word for Microsoft 365 in Garamond 14-point font, a proportionally spaced typeface.

*s/ Benjamin Hayes*
Benjamin Hayes

## CERTIFICATE OF SERVICE

I hereby certify that on May 22, 2026, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system.  Service will be accomplished by the appellate CM/ECF system.

*s/ Benjamin Hayes*
Benjamin Hayes