**No. 26-50418**

# In the United States Court of Appeals for the Fifth Circuit

———————

L.M.L. AND K.G.S., ON BEHALF OF THEMSELVES AND ALL THOSE SIMILARLY SITUATED,

*Plaintiffs-Appellees*,

*v.*

FREEMAN F. MARTIN, IN HIS OFFICIAL CAPACITY AS DIRECTOR OF THE STATE OF TEXAS DEPARTMENT OF PUBLIC SAFETY,

*Defendant–Appellant.*

———————

On Appeal from the United States District Court
for the Western District of Texas, Austin Division

———————

## APPELLANT'S REPLY IN SUPPORT OF MOTION FOR STAY PENDING APPEAL

———————

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
(512) 936-1700

WILLIAM R. PETERSON
Solicitor General

DANIEL M. ORTNER
Assistant Solicitor General
Daniel.Ortner@oag.texas.gov

D. BOWIE DUNCAN
Assistant Solicitor General

Counsel    for    Defendant–Appellant

A stay pending appeal is warranted because Plaintiffs are not injured by the return order provisions and cannot prevail on the merits of their field preemption and facial conflict preemption claims. Plaintiffs' response misconstrues S.B.4 and interprets its provisions "in a way that creates conflict with federal law." *United States v. Texas*, 173 F.4th 659, 663 n.8 (5th Cir. 2026) (*Texas IV*). But Texas's law can be enforced in harmony with federal immigration law, and any potential conflicts must be addressed with as-applied challenges rather than a facial injunction.

## I. Plaintiffs Are Not Injured by the Return Order Provisions and Therefore Lack Standing to Challenge Them.

Plaintiffs' response only further underscores that they lack standing to challenge the return order provisions (Tex. Penal Code § 51.04 and Tex. Code Crim. Proc. art. 5B.002). Plaintiffs call the need to analyze standing provision-by-provision an "effort to split standing hairs." Resp. 5. But that is what Article III requires: Standing is not dispensed in gross, and "plaintiffs must establish standing for each and every provision they challenge." *In re Gee*, 941 F.3d 153, 160 (5th Cir. 2019) (per curiam). Refusing to issue injunctive relief against a provision that does not injure a plaintiff is a key separation of powers obligation ensuring "the proper—and properly limited—role of the courts in a democratic society." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006) (internal quotation marks omitted).

Plaintiffs do not deny that neither the individual plaintiffs nor any class member could be prosecuted for violating Section 51.04. Mot. 8–9. Because none of them are subject to a return order, it is impossible for them to engage in a course of conduct even arguably prescribed by Section 51.04. *Wang v. Paxton*, 161 F.4th 357, 362 (5th

1

Cir. 2025). Nor do Plaintiffs even allege an intent to violate Section 51.04 at some hypothetical future time.

According to Plaintiffs, "an individual with a credible threat of prosecution under [Section 51.03] also by necessity faces a credible threat of a mandatory state removal order." Resp. 4. But a "threat of a" return order does not create standing to challenge Section 51.04. Plaintiffs were required to identify a "a substantial threat of future enforcement" of Section 51.04 against them, *Wang*, 161 F.4th at 362, which they have failed to do. As Appellant explained in his motion (and Plaintiffs do not deny), any enforcement of Section 51.04 rests on a lengthy "speculative chain of possibilities." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409, 414 (2013). Mot. 8. This includes how "independent decisionmakers," including prosecutors, state court judges, federal immigration officials, and even the Mexican government, "will exercise their judgment." *Clapper*, 568 U.S. at 413.

When "an allegation of harm involves a chain of contingencies," this Court must "identify each contingency," and "[e]ach link in the chain of contingencies must be 'certainly impending' to confer standing." *Glass v. Paxton*, 900 F.3d 233, 239 (5th Cir. 2018) (quoting *Clapper*, 568 U.S. at 410). And in *Clapper*, the Supreme Court held that when a plaintiff's injury is contingent on the future decision of a court, (in that case, whether it would authorize surveillance against the plaintiffs), then the plaintiff's injury is too speculative to establish standing because it "rest[s] on speculation about the decisions of independent actors." 568 U.S. at 413-14.

Whether a court would issue a warrant involves less uncertainty than an entire state court criminal prosecution that would have to occur before a return order

issued. And that's just one link in the "chain of contingencies," each of which "must be 'certainly impending,' to confer standing." *Glass*, 900 F.3d at 239.

Nor do Plaintiffs identify any harm from a *voluntary* removal order. Resp. 4–5. Nothing in the federal constitution or federal law *requires* an immigrant to remain in the United States. If a person chooses to leave Texas and return to Mexico rather than serve a prison sentence for violating state law, there is no conflict with federal law or federal rights.

## II. Director Martin Is Likely to Succeed on the Merits.

### A. Field preemption does not bar the challenged provisions.

Plaintiffs do not appear to defend the district court's conclusion that the whole "field of immigration" is preempted, Appx.216, 219, pointing instead to the narrower field of "entry and removal." Resp. 8. But even that field is far broader and more abstract than the specific field of alien registration that the Supreme Court concluded was preempted in *Arizona v. United States*, 567 U.S. 387, 401 (2012).

Plaintiffs argue that other preempted fields like "nuclear safety" are equally broad or abstract. Resp. 9. But the Supreme Court has carefully confined preemption in that field to protect "preexisting state authority" to regulate energy facilities. *Pac. Gas and Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 209, 213 (1983). More recently the Supreme Court held that a regulation of uranium mining was not preempted, with members emphasizing that the federal government is not "the sole regulator of all matters nuclear" and limiting preemption to "core federal powers reserved to the federal government." *Va. Uranium, Inc. v. Warren*, 587 U.S. 761, 773 (2019) (lead opinion of Gorsuch, J.).

That is the same methodical approach the Supreme Court took in *Arizona*, 567 U.S. at 401, holding that only one of the challenged provisions, involving alien registration, was field preempted. But under Plaintiffs' approach, all of the provisions challenged in *Arizona* would have been field preempted rather than just one.

Plaintiffs acknowledge federal and state officials regularly collaborate in enforcing entry and removal laws, but argue this demonstrates that States lack authority to criminalize unlawful entry and reentry. Resp. 10. That's exactly backwards. It demonstrates that immigration enforcement has *always* involved collaborative state and federal efforts. And there is nothing in place like the "complete system for alien registration" that the Supreme Court found to be a "single integrated and all-embracing system" that foreclosed complimentary state action in *Arizona*, 567 U.S. at 400.

Plaintiffs rely on decisions involving similar legislation from a merits panel of the Eighth Circuit and a motions panel of the Eleventh Circuit. Resp. 1. But as Judge Stras noted in his dissent from denial of en banc review, the Eighth Circuit panel only found conflict, not field preemption. *See Iowa Migrant Movement for Just. v. Bird*, 166 F.4th 688, 693 (8th Cir. 2026) (Stras J., dissenting). And the application of field preemption is "hard to square with *Arizona*, which allowed the state to enforce one immigration statute but not others." *Id.* The Eleventh Circuit likewise did not determine that Florida's law was field preempted, noting that Florida had not "made a strong showing" of error. *Fla. Immigrant Coal. v. Att'y Gen.*, No. 25-11469, 2025 WL 1625385, at *3 (11th Cir. June 6, 2025).

4

Field preemption is intended to be "rare," *Kansas v. Garcia*, 589 U.S. 191, 208 (2020), requiring "an unambiguous congressional mandate to that effect" *Fla. Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 147 (1963). But the district court's standard would lead to field preemption being far from "rare," and result in a "serious intrusion into state sovereignty." *Va. Uranium,* 587 U.S. at 773 (lead opinion of Gorsuch, J.). Director Martin is likely to prevail on this issue.

**B.   The challenged provisions do not facially conflict with federal immigration law.**

Plaintiffs' conflict preemption argument fails as a facial challenge. Plaintiffs focus on isolated instances of potential conflicts—including some that *cannot* apply to the named Plaintiffs. *See* Mot. 15 n.4. But these isolated potential conflicts cannot support Plaintiffs' argument that the challenged provisions are facially preempted.

S.B.4 mirrors federal immigration law with regard to the crimes of unlawful entry and reentry in almost every respect. And because S.B.4 is "nearly a mirror image of federal law," that means "that any conflict will quite literally be the exception, not the rule." *Iowa Migrant Movement*, 166 F.4th at 693 (Stras J., dissenting).

Ultimately, all that Director Martin has to do to prevail against Plaintiffs' facial challenge is to show that there are some circumstances where the provisions of S.B.4 can be lawfully enforced. *United States v. Rahimi*, 602 U.S. 680, 693 (2024). Plaintiffs cannot explain how prosecuting an individual who has already been prosecuted under a substantively identical federal law would conflict with federal law. Nor can they show how a return order supported and executed by federal immigration officials

conflicts with federal law. Since these applications exist, Plaintiffs' facial challenge fails.

Plaintiffs' response is to focus on potential conflicts with "the discretion" that federal officials are given under federal immigration law. Resp. 13-14. But conflict preemption must be found "in the text and structure of the [federal provision] at issue," *Zyla Life Scis., L.L.C. v. Wells Pharma of Hous., L.L.C.*, 134 F.4th 326, 329 (5th Cir. 2025), not in conflict with vague policy preferences.

With regard to Section 51.03 and Article 5B.003, this discretion argument also does not reflect reality. Federal law makes illegal reentry a crime, regardless of whether one is granted lawful presence by the civil immigration system. Mot. 13-14. The discretion in question is therefore just the ordinary exercise of prosecutorial discretion regarding whether and when to prosecute. But even "extensive enforcement discretion" does "not preclude parallel or non-parallel state regulation of the same conduct." *Zyla*, 134 F.4th at 338. That is different from a law enjoined in *Arizona* that allowed Arizona to impose criminal penalties for "aliens who accept unlawful employment" and thus conflicted with Congress's "deliberate choice not to impose criminal penalties on aliens who seek, or engage in, unauthorized employment." *Arizona*, 567 U.S. at 405.

Turning to the return order provisions, Texas plans to coordinate with federal immigration officials to facilitate removal of those who are prosecuted under S.B.4 by delivering aliens to federal immigration officials at a lawful point of entry. Mot. 14-15. Given this method of enforcement, there is no facial conflict. If conflicts

emerge in practice, then Plaintiffs can bring an as-applied challenge, but they cannot prevail on their facial conflict preemption claim.

### C. Provisional class certification was rushed, and the certified class is not ascertainable

The district court erred by failing to conduct the rigorous analysis required by Rule 23 before certifying a class. In granting "provisional certification," it concluded that Plaintiffs had made "an adequate showing *at this stage of the litigation* to warrant *at least* a provisional class certification." Appx.1091 (emphasis added). In other words, it applied a lesser burden for provisional certification at an early "stage of the litigation."

This was error. Even assuming that provisional class certification is valid, which at least one circuit court has recently called into question, provisional classes are subject to the same "demanding requirement(s)" under Rule 23 as ordinary classes. *Dickinson v. Trump*, No. 26-1609, 2026 WL 1133353, at *9 (9th Cir. Apr. 27, 2026); *see also* 2 Newberg and Rubenstein on Class Actions § 4:30 (6th ed.) (suggesting that "provisional class certification" still requires "full certification proceedings" and that the phrase "should not be seen or used to reference a short cut in the certification analysis but rather to suggest a possible limitation on the duration of certification"). In its "hasty application of Rule 23," *Trump v. CASA, Inc.*, 606 U.S. 831, 868 (2025) (Alito J., concurring), the district court failed ensure these demanding requirements were met.

The district court's failure is underscored by the limited discovery it authorized before certifying a class. Substantial discovery is ordinary in class actions before

7

certification, but the district court allowed Defendant only five interrogatories and a one-hour deposition for each of the named Plaintiffs, Dkt. 37 at 10-11, which was impeded by a language barrier.

Plaintiffs' contention that ascertainability is a "low bar in the context" of Rule 23(b)(2), Resp. 19, is Plaintiffs' assertion, not something this Court has held. This Court has said proof of ascertainability in the Rule 23(b)(2) context is an "elementary" requirement. *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970) (per curiam); *see also Braidwood Mgmt., Inc. v. Equal Emp. Opportunity Comm'n*, 70 F.4th 914, 933 n.36 (5th Cir. 2023) (affirming that *DeBremaecker* remains binding precedent) And while this Court noted that "some courts" have downplayed the ascertainability requirement in this context, *In re Monumental Life Ins. Co.*, 365 F.3d 408, 413 (5th Cir. 2004), it has not done so itself, as *Braidwood* demonstrates.

Plaintiffs suggest that their class is ascertainable because it tracks the elements of Section 51.03. Resp. 19. But because the district court would not be able to identify— at any "stage of the proceeding" — "[a]ll noncitizens who now or in the future enter, attempt to enter, or are found in the state of Texas," Appx.97, the class is not ascertainable. *See Frey v. First Nat. Bank Southwest*, 602 F. App'x 164, 168 (5th Cir. 2015) (citing William B. Rubenstein, Newberg on Class Actions § 3:3 (5th ed.2011)). Identifying the class's members, if it were possible at all, would also require "extensive and individualized fact-finding," which shows that the class is not ascertainable. *Career Counseling, Inc. v. AmeriFactors Fin. Grp., LLC*, 91 F.4th 202, 206 (4th Cir. 2024).

Provisional class certification was improper, and this Court should stay enforcement of the class-wide injunction.

## II. The Remaining Factors Favor a Stay Despite Plaintiffs' Speculative Injury Claims.

"[I]njunctive relief [is] an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). Plaintiffs must satisfy all four factors to prevail—particularly the likelihood of success on the merits. Because Plaintiffs "cannot show a substantial likelihood of success on the merits . . . there is no need for the court to address the other requirements." *Big Tyme Investments, L.L.C. v. Edwards*, 985 F.3d 456, 464 (5th Cir. 2021).

Regardless, the remaining factors also favor the State. Plaintiffs downplay the irreparable harm of "denying the public interest in the enforcement of its laws." *Veasey v. Abbott*, 870 F.3d 387, 391 (5th Cir. 2017) (per curiam).[1] Plaintiffs argue that Texas can use other tools to address illegal immigration, Resp. 20, but the public has a strong interest in Texas having all tools at its disposal to address the "human toll" of illegal immigration. *Texas IV*, 173 F.4th at 662.

Plaintiffs also contend that Director Martin is not "harmed by an injunction against enforcement of the removal provisions" if he cannot prosecute for illegal

---

[1] That Director Martin's motion was filed a week after entry of the preliminary injunction, Resp. 20 n.8, reflects logistical delays in getting transcripts, opening a case, and compiling the record, and does not minimize the State's need for a stay pending appeal.

reentry. Resp. 5–6. But members of Plaintiffs' illegal re-entry class may (in fact, likely) have also violated the prohibition on illegal entry under Section 51.02, which has not been enjoined and is also a predicate for return orders. Plaintiffs' challenge to Section 51.04 creates an administrative nightmare. As the injunction stands, in a prosecution under Section 51.02, the return order provisions cannot be applied if the defendant is also a member of the illegal reentry class, even though identifying whether a defendant is a member of this class might well require a defendant to confess to a violation of federal law (28 U.S.C. § 1326).

By contrast, Plaintiffs' fear of being "wrongfully removed" and subject to "death, torture, and rape," Resp. 22, is highly speculative and attenuated. As-applied challenges and defenses can adequately address any potentially inequitable outcomes.

## Conclusion

For these reasons, this Court should stay the injunction pending appeal.

Respectfully submitted.

Ken Paxton
Attorney General of Texas

Brent Webster
First Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
(512) 936-1700

William R. Peterson
Solicitor General

/s/ Daniel M. Ortner
Daniel M. Ortner
Assistant Solicitor General

D. Bowie Duncan
Assistant Solicitor General

Counsel for Defendant–Appellant

11

## CERTIFICATE OF SERVICE

On May 28, 2026, this document was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court. Counsel further certifies that: (1) any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; (2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1; and (3) the document has been scanned with the most recent version of Symantec Endpoint Protection and is free of viruses.

/s/ Daniel M. Ortner
DANIEL M. ORTNER

## CERTIFICATE OF COMPLIANCE

This motion complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 2,597 words, excluding the parts of the motion exempted by Rule 32(f); and (2) the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Equity) using Microsoft Word (the same program used to calculate the word count).

/s/ Daniel M. Ortner
DANIEL M. ORTNER