# In the United States Court of Appeals for the Fifth Circuit

---

L.M.L., ON BEHALF OF THEMSELVES AND ALL THOSE SIMILARLY SITUATED; K.G.S., ON BEHALF OF THEMSELVES AND ALL THOSE SIMILARLY SITUATED,

*Plaintiffs-Appellees,*

v.

FREEMAN MARTIN, IN HIS OFFICIAL CAPACITY AS DIRECTOR OF THE STATE OF TEXAS DEPARTMENT OF PUBLIC SAFETY,

*Defendant-Appellant.*

---

On Appeal from the United States District Court
for the Western District of Texas
No. 1:26-cv-1170

---

## MOTION FOR LEAVE TO FILE BRIEF FOR THE GOVERNOR OF TEXAS AS AMICUS CURIAE IN SUPPORT OF APPELLANT'S MOTION FOR STAY PENDING APPEAL

---

GREG ABBOTT
Governor of Texas


Office of the Governor
P.O. Box 12428
Austin, Texas 78711
Tel.: (512) 936-3306
Fax: (512) 463-1932

TREVOR W. EZELL
General Counsel
State Bar No. 24109849
Trevor.Ezell@gov.texas.gov

JASON T. BRAMOW
Deputy General Counsel

*Counsel for Amicus Curiae
Governor Greg Abbott*

# SUPPLEMENTAL STATEMENT OF INTERESTED PARTIES

*Amicus Curiae* is a governmental entity. Under Fifth Circuit Rule 28.2.1, a certificate of interested parties is not required.

/s/ Trevor W. Ezell
TREVOR W. EZELL
*Counsel of Record for Amicus Curiae*

## MOTION FOR LEAVE TO FILE BRIEF AS AMICUS CURIAE

Pursuant to Federal Rules of Appellate Procedure 27 and 29, Governor Greg Abbott respectfully moves for leave to file the accompanying *amicus curiae* brief in support of Defendant-Appellant Martin's motion for stay pending appeal. While the Governor is permitted to file this brief without the consent of the parties,[1] neither the Federal Rules of Appellate Procedure nor the Fifth Circuit Rules expressly contemplate *amicus* briefs in support of a motion for stay pending appeal. However, federal courts possess inherent authority to accept the participation of *amicus curiae* when it would aid the Court.[2] Thus, out of an abundance of caution, Governor Abbott respectfully moves for leave to file.

Governor Abbott has a substantial interest in the questions presented by this appeal. As the Chief Executive Officer and Commander-in-Chief of the

---

[1] *See* Docket Entry, *Arnold v. Barbers Hill I.S.D.*, ECF 122, No. 23-20256 (5th Cir. Nov. 19, 2025) (docketing *amicus* brief by Governor Abbott without need for motion or agreement of the parties and noting that "Consent is Not Necessary as Amicus is a Government Entity"); *Texas v. Comm. Cap. Partners LP*, No. 4:26-CV-29-SDJ, 2026 WL 508794, at *1 n.1 (E.D. Tex. Feb. 24, 2026) (noting *amicus* brief from Governor Abbott was "received and considered" in agreeing with the brief's arguments for remand to state court).

[2] *See, e.g.*, *In re Halo Wireless, Inc.*, 684 F.3d 581, 596 (5th Cir. 2012) ("Whether to permit a nonparty to submit a brief, as amicus curiae, is, with immaterial exceptions, a matter of judicial grace."); *United States v. Louisiana*, 751 F. Supp. 608, 620 (E.D. La. 1990) (finding "the Governor's continued involvement in this case [as *amicus*] would prove useful to the Court").

State of Texas, Governor Abbott bears constitutional and statutory responsibility for protecting the territorial integrity, public safety, and sovereign interests of Texas. This case concerns, among other important issues, the State's historic police powers. Governor Abbott's proposed *amicus* brief offers both historical and constitutional analysis that has not been presented by either party. Accordingly, the Governor respectfully suggests his brief may assist the Court in resolving the important questions presented by this case.

## CONCLUSION

Accordingly, Governor Abbott requests the Court grant this motion and docket the attached *amicus* brief in support of Defendant-Appellant Martin's motion for stay pending appeal.

Respectfully submitted.

GREG ABBOTT
Governor of Texas

/s/ Trevor W. Ezell
TREVOR W. EZELL
General Counsel
State Bar No. 24109849
Trevor.Ezell@gov.texas.gov

JASON T. BRAMOW
Deputy General Counsel

*Counsel for Amicus Curiae*
*Governor Greg Abbott*

## CERTIFICATE OF SERVICE

On May 28, 2026, this brief was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court. Counsel further certifies that: (1) any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; (2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1; and (3) the document has been scanned with the most recent version of Microsoft Defender and is free of viruses.

/s/ Trevor W. Ezell
TREVOR W. EZELL

## CERTIFICATE OF COMPLIANCE

This brief complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2) because it contains 386 words; and (2) the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Calisto MT) using Microsoft Word (the same program used to calculate the word count).

/s/ Trevor W. Ezell
TREVOR W. EZELL

## CERTIFICATE OF CONFERENCE

Pursuant to Fifth Circuit Rule 27.4, counsel for *amicus curiae* contacted all other parties via email to their counsel of record. Director Martin and the United

States are not opposed. Appellees take no position on Governor Abbott's motion pending their review of the filing.

/s/ Trevor W. Ezell
TREVOR W. EZELL

# In the United States Court of Appeals for the Fifth Circuit

---

L.M.L., ON BEHALF OF THEMSELVES AND ALL THOSE SIMILARLY SITUATED; K.G.S., ON BEHALF OF THEMSELVES AND ALL THOSE SIMILARLY SITUATED,

*Plaintiffs-Appellees,*

v.

FREEMAN MARTIN, IN HIS OFFICIAL CAPACITY AS DIRECTOR OF THE STATE OF TEXAS DEPARTMENT OF PUBLIC SAFETY,

*Defendant-Appellant.*

---

On Appeal from the United States District Court
for the Western District of Texas
No. 1:26-cv-1170

---

## BRIEF FOR THE GOVERNOR OF TEXAS AS AMICUS CURIAE IN SUPPORT OF APPELLANT'S MOTION FOR STAY PENDING APPEAL

---

GREG ABBOTT
Governor of Texas


Office of the Governor
P.O. Box 12428
Austin, Texas 78711
Tel.: (512) 936-3306
Fax: (512) 463-1932

TREVOR W. EZELL
General Counsel
State Bar No. 24109849
Trevor.Ezell@gov.texas.gov

JASON T. BRAMOW
Deputy General Counsel

*Counsel for Amicus Curiae
Governor Greg Abbott*

# SUPPLEMENTAL STATEMENT OF INTERESTED PARTIES

*Amicus Curiae* is a governmental entity. Under Fifth Circuit Rule 28.2.1, a certificate of interested parties is not required.

/s/ Trevor W. Ezell
TREVOR W. EZELL
*Counsel of Record for Amicus Curiae*

# TABLE OF CONTENTS

Page

SUPPLEMENTAL STATEMENT OF INTERESTED PARTIES ...................................i

TABLE OF AUTHORITIES..................................................................iii

INTEREST OF AMICUS CURIAE ................................................................ 1

ARGUMENT ..................................................................................... 2

    I.   First Principles Counsel Against This Effort to Extend *Arizona* and Further Depart from the Constitution's Design. .......................... 2

    II.  Supreme Court Precedent Reaffirming the Separate Sovereigns Doctrine Abhors "Preemption" of State Criminal Laws. ........................................................................................... 6

    III. The Lower Court's Own Non-justiciability Findings— Coupled with the Federal Government's Support—Dooms this Facial Challenge. ...................................................................... 11

CONCLUSION ................................................................................... 12

CERTIFICATE OF SERVICE.................................................................. 13

CERTIFICATE OF COMPLIANCE ............................................................. 13

# TABLE OF AUTHORITIES

Page(s)

**Cases:**

*Alfred L. Snapp & Son, Inc. v. Puerto Rico,*
 458 U.S. 592 (1982) ............................................................... 4

*Arizona v. United States,*
 567 U.S. 387 (2012) ...........................................2, 3, 5, 6, 8, 12

*Brady v. United States,*
 397 U.S. 742 (1970) ............................................................... 8

*Denezpi v. United States,*
 596 U.S. 591 (2022) .............................................................8, 10

*Fong Yue Ting v. United States,*
 149 U.S. 698 (1893) ............................................................... 7

*Gamble v. United States,*
 587 U.S. 678 (2019) ............................................................. 8, 9

*Heath v. Alabama,*
 474 U.S. 82 (1985) ................................................................. 8

*Henderson v. Mayor of City of New York,*
 92 U.S. 259 (1875) ................................................................. 5

*Janus v. Am. Fed'n of State, Cnty., & Mun. Employees, Council 31,*
 585 U.S. 878 (2018) ............................................................... 6

*L.M.L. v. Martin,*
 No. 1:26-cv-01170, 2026 WL 1355237 (W.D. Tex. May 14,
 2026) .................................................................... 2, 6, 8, 10

*Loper Bright Enters. v. Raimondo,*
 603 U.S. 369 (2024) ...........................................................3, 5, 6

*Mayor of City of New York v. Miln,*
 36 U.S. 102 (1837) ................................................................. 5

*Moore v. Illinois,*
 55 U.S. 13 (1852) ................................................................... 5

*Munaf v. Geren,*
 533 U.S. 674 (2008) ............................................................... 8

*United States v. Abbott,*
 690 F.Supp.3d 708 (W.D. Tex. 2023) ..................................... 11

*United States v. Abbott,*
 110 F.4th 700 (5th Cir. 2024) ............................................... 11

*United States v. Angleton*,
   314 F.3d 767 (5th Cir. 2002) ...................................................... 8

*United States v. Minker*,
   350 U.S. 179 (1956) .................................................................. 3

*United States v. Rahimi*,
   602 U.S. 680 (2024) ................................................................ 11

*United States v. Texas*,
   173 F.4th 659 (5th Cir. 2026) ............................... 2, 6, 8, 10, 11

**Constitutional Provisions, Statutes, and Rules:**

U.S. CONST. art. I:
   § 8, cl. 4 ................................................................................. 3
   § 9, cl. 1 ................................................................................. 4

U.S. CONST., art. IV:
   § 3, cl. 1 ............................................................................. 4, 9
   § 4 ........................................................................................ 11

U.S. CONST., art. VI, cl. 3 ......................................................... 3

8 U.S.C.:
   § 1325 .................................................................................... 7
   § 1326 .................................................................................... 7

18 U.S.C.:
   § 922(g) ................................................................................. 7
   § 1111 .................................................................................... 7
   § 1509 .................................................................................... 7
   § 2331 .................................................................................... 7

28 U.S.C. § 453 ......................................................................... 3

An Act to Establish an Uniform Rule of Naturalization, 1 Stat.
   103, 104, ch. 3, § 1 (March 26, 1790) ..................................... 5

TEX. CONST. art. IV:
   § 1 .......................................................................................... 1
   § 7 .......................................................................................... 1
   § 10 ........................................................................................ 1

TEX. CODE CRIM. PROC. art. 5B.002(c)(1) ................................. 7

Tex. Penal Code:

    § 19.02 ...................................................................................... 7

    § 46.04 ...................................................................................... 7

    § 51.02 ...................................................................................... 7

    § 51.03 ...................................................................................... 7

    § 51.04 ...................................................................................... 7

    § 76.02 ...................................................................................... 7

S.B. 4, 88th Leg., 4th C.S. (Tex. 2023) ................................... 1, 6, 7, 9, 10, 11

Act of Nov. 13, 1788, ch. 12, 1788 Va. Acts 9, *reenacted in* Va.
Code tit. 54, ch. 198, § 39 (1849) ................................................................. 4

Act of Feb. 26, 1794, ch. 32, § 13, 1794 Mass. Acts & Laws 375,
383 ................................................................................................................... 4

Act of Mar. 27, 1794, ch. 53, § 2, 1794 N.Y. Laws 525, 526 .......................... 4

Act of Jun. 27, 1820, ch. 290, 1820 Mass. Laws 428 ..................................... 5

**Other Authorities:**

1 William Blackstone, Commentaries (7th ed. 1775) ............................. 4

2 Max Farrand, The Records of the Federal Convention
of 1787 (1966) ............................................................................................... 9

3 Max Farrand, The Records of the Federal Convention
of 1787 (1911) ............................................................................................... 9

*Immigration*, Black's Law Dictionary (12th ed. 2024) ............................. 3

*Naturalization*, Black's Law Dictionary (12th ed. 2024) .......................... 3

Proclamation No. 10,888, 90 Fed. Reg. 8,333 (Jan. 20, 2025) ..................... 11

St. George Tucker, Blackstone's Commentaries (1803) ........................ 9

## INTEREST OF AMICUS CURIAE

Our federal structure presents a simple but hard-fought truth: The States that formed into a union 250 years ago retained their sovereignty over defined physical territories, which not even the new National Government could touch. That truth is not some philosophical abstraction. Texas shares more than 1,200 miles of border with Mexico—a failed narco-state that has proven both unwilling and unable to stop incursions from its own territory into Texas.

Greg Abbott is Governor of the State of Texas. The Texas Constitution vests all executive power in an Executive Department headed by the Governor. TEX. CONST. art. IV, § 1. As "Chief Executive Officer," the Governor is tasked with causing the State's laws "to be faithfully executed." *Id.* art. IV, § 10. As "Commander-in-Chief," he is charged with protecting the lives, property, and security of Texans, including from domestic "insurrections" and foreign "invasions." *Id.* art. IV, § 7.

Disruption of Texas's criminal laws like S.B. 4, 88th Leg., 4th C.S. (Tex. 2023), and unchecked illegal entry across the State's territorial boundaries, therefore, directly implicate sovereign interests the Governor is constitutionally obligated to defend.

1

## ARGUMENT

### I. First Principles Counsel Against This Effort to Extend *Arizona* and Further Depart from the Constitution's Design.

The lower court made clear it was relying on the "well-reasoned" opinions of five *en banc* dissenters in *United States v. Texas*, 173 F.4th 659 (5th Cir. 2026). *See, e.g.*, *L.M.L. v. Martin*, No. 1:26-cv-01170, 2026 WL 1355237, at *4, 11, 18, 20 (W.D. Tex. May 14, 2026). That was an odd choice, given that seven members of the *en banc* Court thought the merits analysis pointed in Texas's favor. *See United States*, 173 F.4th at 674–679 (Oldham, J., concurring).

In any event, taking cues from the *en banc* minority raises a problem: Judge Richman conceded that the sorts of arguments plaintiffs press—and that the lower court accepted here—require an *extension* of the Supreme Court's decision in *Arizona v. United States*, 567 U.S. 387 (2012). *See Texas*, 173 F.4th at 719–720 (Richman, J., dissenting) (noting "the Supreme Court was not called upon to decide whether alien entry and removal is field preempted"). For that reason, Judge Richman appealed to *Arizona*'s "guiding principles" and recited isolated phrases of the opinion. *Id.* at 714, 716, 719. It did not matter "that states regulated immigration in the nineteenth century as part of their police powers until Congress began to legislate on immigration in 1875." *Id.* at 721.

That inverts our Constitution's design, not only with respect to the sovereign power States retain in our federal system, but also with respect to

Article III itself. Federal judges take an oath to uphold "the Constitution and laws of the United States"—not every stray remark in judicial opinions. *See* 28 U.S.C. § 453; U.S. CONST. art. VI, cl. 3. Faithful adherence to precedent, in other words, does not consist of "'power quoting'" a late-breaking jurisprudential tributary, while ignoring the long-standing, "mainstream" of judicial precedent that elucidates the meaning of our Constitution. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 419, 441 (2024) (Gorsuch, J., concurring).

Accordingly, the question here is whether courts should further depart from the Constitution's design, early American practice, and the first century of Supreme Court precedent when *Arizona* does not obligate them to do so. They should not.

Start with the text. The Constitution grants Congress enumerated power "[t]o establish an uniform Rule of Naturalization." U.S. CONST. art. I, § 8, cl. 4. Naturalization, of course, is not the same thing as immigration. *See, e.g.*, *United States v. Minker*, 350 U.S. 179, 193–194 (1956) (describing "basic distinctions" between "immigration" and "naturalization") (Black, J. concurring). Naturalization concerns membership in a political community—*i.e.*, who may become (or remain) a citizen. *Naturalization*, BLACK'S LAW DICTIONARY (12th ed. 2024). Immigration, meanwhile, concerns the movement of aliens across sovereign boundaries. *Immigration*, BLACK'S LAW DICTIONARY (12th ed. 2024).

3

The Constitution nowhere grants Congress—or any other part of the federal government—enumerated power over immigration. Indeed, the only mention of "[im]migration" occurs in a list of the powers *denied* to Congress (for a time) and *assumes* the existence of State power over the movement of aliens across their borders. *See* U.S. CONST. art. I, § 9, cl. 1 ("The Migration or Importation of such Persons as any of the States now existing shall think proper to admit, shall not be prohibited by the Congress prior to the Year one thousand eight hundred and eight…."). For both the federal and state governments—for "all states"—the (unenumerated) power to regulate immigration is an inherent attribute of sovereignty. 1 WILLIAM BLACKSTONE, COMMENTARIES 259 (7th ed. 1775). States, like the federal government, exercise sovereign power over physical territory that cannot be altered without their consent. *Alfred L. Snapp & Son, Inc. v. Puerto Rico*, 458 U.S. 592, 601 (1982); U.S. CONST. art. IV, § 3, cl. 1.

Early American practice shows States not only had concurrent authority over immigration into their territories; rather, they were the primary actors. States prohibited the entry of "malefactors." *E.g.*, Act of Nov. 13, 1788, ch. 12, 1788 Va. Acts 9, *reenacted in* Va. Code tit. 54, ch. 198, § 39 (1849). They removed public charges "to any place beyond sea." *E.g.*, Act of Feb. 26, 1794, ch. 32, § 13, 1794 Mass. Acts & Laws 375, 383. They sealed their borders to restrict entry of the diseased. *E.g.*, Act of Mar. 27, 1794, ch. 53, § 2, 1794 N.Y. Laws 525, 526.

4

And they punished those transporting aliens illegally across their borders. *E.g.*, Act of Jun. 27, 1820, ch. 290, 1820 Mass. Laws 428.[1]

For the first century of our history, the Supreme Court approved State authority over admission, exclusion, and removal of aliens. A State, the Court observed, has "the same undeniable and unlimited jurisdiction over all persons … within its territorial limits, as any foreign nation" to prevent an "influx of persons." *Mayor of City of New York v. Miln*, 36 U.S. 102, 133, 139 (1837). States could also "exclud[e] an unacceptable population" and criminalize conduct the federal government criminalizes. *Moore v. Illinois*, 55 U.S. 13, 17 (1852). States could not act upon the instrumentalities or channels of foreign commerce that happen to implicate migration of aliens. *Henderson v. Mayor of City of New York*, 92 U.S. 259, 270–271 (1875). But while taxing vessels may be commerce, *ibid.*, illegal human trafficking is not, *Miln*, 36 U.S. at 136.

*Arizona* "did not discuss [these] contrary precedents issued by the Court since the founding, let alone purport to overrule any of them." *Loper Bright*, 603 U.S. at 442 (Gorsuch, J., concurring). Nor did it review the Constitution's text

---

[1] This authority is unsurprising, given that even Congress's *enumerated* naturalization power was deemed concurrent at the founding. *See* An Act to Establish an Uniform Rule of Naturalization, 1 Stat. 103, 104, ch. 3, § 1 (March 26, 1790) (allowing an alien to be "admitted to become a citizen" but *not* if that person has been "heretofore proscribed by any state").

or first-century American practice. That makes it "an unlikely place for a revolution" in State immigration power. *Id.* at 441. That is also why the Governor maintains *Arizona* was wrongly decided and would welcome the Supreme Court revisiting it. Regardless, this Court should not extend an "anomalous" decision "beyond circumstances where it directly controls." *Janus v. Am. Fed'n of State, Cnty., & Mun. Employees, Council 31*, 585 U.S. 878, 925 (2018). Courts may need to apply existing distortions required by vertical *stare decisis*, but they ought not distort the Constitution further.

## II. Supreme Court Precedent Reaffirming the Separate Sovereigns Doctrine Abhors "Preemption" of State Criminal Laws.

Even ignoring the founding era, and assuming States somehow lack power over immigration under modern precedent, plaintiffs still cannot prevail. Texas has not enacted "its own state immigration laws." *Contra L.M.L.*, 2026 WL 1355237, at *8, 30; *Texas*, 173 F.4th at 680, 684, 686, 687, 730 (Richman, J., dissenting). S.B. 4 is not an immigration law at all. It does not authorize forced "removals" of aliens. *Contra L.M.L.*, 2026 WL 1355237, at *2, 9, 13, 16, 17, 18; *Texas*, 173 F.4th at 680, 682, 684, 685, 714, 722, 725, 726 (Richman, J., dissenting). Nor does it create state court immigration "proceeding[s]" to ascertain whether an alien "may remain within the country," which are "in no

proper sense a trial and sentence for a crime or offense." *Fong Yue Ting v. United States*, 149 U.S. 698, 730 (1893).

Rather, S.B. 4 is a criminal law that authorizes a state court criminal prosecution. It creates three state crimes: illegal entry into Texas, TEX. PENAL CODE § 51.02; illegal re-entry into Texas, *id.* § 51.03; and failure to comply with a state court order after "agree[ing]" to it voluntarily, *id.* § 51.04; TEX. CODE CRIM. PROC. art. 5B.002(c)(1). Like so many others, these state criminal proscriptions overlap with similar criminal proscriptions under federal law. *See, e.g.*, 8 U.S.C. § 1325 (illegal entry into the United States); 8 U.S.C. § 1326 (illegal re-entry into the United States); 18 U.S.C. § 1509 (refusal to comply with a federal court order).

That, of course, is a common feature of our federal system. The United States criminalizes murder, unlawful possession of a firearm, and terrorism. *See* 18 U.S.C. § 1111; *id.* § 922(g); *id.* § 2331. So, too, does the State of Texas. *See* TEX. PENAL CODE §§ 19.02 (murder), 46.04 (unlawful possession of a firearm), 76.02 (terrorism). It makes little sense, therefore, to ask whether federal criminal laws "preempt" their state court analogues.[2] And the lower court's emphasis on

---

[2] A state criminal conviction imposing a custodial sentence in no way precludes an alien from seeking relief from forced removal by the federal government. A state court criminal judgment does nearly the opposite—it *keeps*

7

federal enforcement "discretion" proves too much. *L.M.L.*, 2026 WL 1355237, at \*14, 19–20; *see also Texas*, 173 F.4th at 717 (Richman, J., dissenting). One sovereign's decision to prosecute (or not to prosecute) does *not* ground preclusion for a different sovereign seeking to enforce its own criminal laws. *See, e.g.*, *United States v. Angleton*, 314 F.3d 767, 776 (5th Cir. 2002).

That is the central thesis of the separate sovereigns doctrine, which the Supreme Court has repeatedly reaffirmed—including multiple times after *Arizona. See, e.g.*, *Denezpi v. United States*, 596 U.S. 591, 594 (2022). Texas is an independent sovereign with "inherent" power to enact and enforce its own criminal code. *Heath v. Alabama*, 474 U.S. 82, 89 (1985). "An 'offence' is defined by a law, and each law is defined by a sovereign. So where there are two sovereigns"—like the United States and the State of Texas—"there are two laws, and two 'offences.'" *Gamble v. United States*, 587 U.S. 678, 685 (2019). The National Government and Texas may thus enforce *overlapping* criminal laws

---

the alien here. *Cf. Munaf v. Geren*, 533 U.S. 674, 693–694 (2008) (rejecting aliens' effort to invoke *habeas corpus* to avoid being released from custody). Moreover, an alien's *voluntary* decision to self-deport—and forego such relief—can hardly be said to constitute a *state* intrusion on *federal* power. *Cf. Brady v. United States*, 397 U.S. 742, 750–751, 755 (1970) (finding plea deal to avoid death penalty "voluntary"); *contra Texas*, 173 F.4th at 741 (Higginson, J., dissenting) (suggesting self-deportation to avoid criminal prosecution cannot be "voluntary"); *id.* at 727 (Richman, J., dissenting) (similar).

against the *same* person for "[a] *single* act" because that act may simultaneously implicate "different interests of separate sovereigns." *Id.* at 686.

One such interest is a State's concern for the integrity of its territorial boundaries, which is expressly protected by Article IV, Section 3, Clause 1 of the Constitution. This provision states an important principle of reciprocal territorial integrity, which requires *both* the federal and state governments to consent to any change in their respective boundaries.

The language was no mere afterthought. After extensive debate, 2 MAX FARRAND, THE RECORDS OF THE FEDERAL CONVENTION OF 1787, at 455–456, 462–464 (1966), the framers opted *not* to give the National Government a unilateral override of a State's territorial sovereignty but voted instead to "*pledge to those States* the *whole force* of the *union* to *preserve*" their boundaries unaltered, 3 MAX FARRAND, THE RECORDS OF THE FEDERAL CONVENTION OF 1787, at 226–227 (1911). As one commentator observed, "[t]he southern states, being more peculiarly open to danger from this quarter"—*i.e.*, to incursions along the borders of the country—"ought to be particularly tenacious of" this guarantee. ST. GEORGE TUCKER, BLACKSTONE'S COMMENTARIES 367 (1803). That is why S.B. 4 matters: The first order of government after *defining* a political community is *protecting* it, both of which are done with borders.

The lower court seemed unaware that concurrent federal and state criminal laws operate independently. It claimed that "SB 4 … provides state officials the power to enforce federal law without federal supervision." *L.M.L.*, 2026 WL 1355237, at \*19; *see Texas*, 173 F.4th at 722 (Richman, J., dissenting) (suggesting S.B. 4 permits Texas "to impose its own penalties for the federal offenses"). Wrong. The criminal laws of Sovereign A remain distinct from identical criminal laws of Sovereign B—even if "approved" by Sovereign B. *Denezpi*, 596 U.S. at 595–596, 598–599. Texas personnel implementing S.B. 4 "enforce [*state*] law without federal supervision," just like they always do.

To be sure, the *en banc* dissenters acknowledged Texas's distinct sovereign interest grounded in territorial sovereignty: When illegal aliens cross into Texas, they observed, "[f]ederal immigration law does not shield [them] from the consequences of committing state criminal offenses such as trespass, theft, burglary, rape, assault, murder, etc. States are free to apprehend, prosecute and imprison illegal aliens who violate such state laws." *Texas*, 173 F.4th at 707–708 (Richman, J., dissenting). That concession should be the end of this case. There is no "alien exception" to state criminal laws, certainly not criminal laws implicating the core sovereign interest in territorial integrity.

### III. The Lower Court's Own Non-justiciability Findings—Coupled with the Federal Government's Support—Dooms this Facial Challenge.

The Constitution's self-defense provisions, even as understood by the lower court, defeat plaintiffs' claim. Texas has never argued the Governor's invocation of the Self-Defense Clause renders "this case" non-justiciable. *Texas*, 173 F.4th at 697–700 (Richman, J., dissenting). Instead, it grounds a constitutional defense that defeats this statutory preemption claim. *See United States v. Abbott*, 110 F.4th 700, 722–723 (5th Cir. 2024) (Oldham, J., concurring).

If the Court thought that was a hard question before, it is easy now. The lower court previously agreed that whether an invasion exists is non-justiciable when declared by the *federal* government. *See United States v. Abbott*, 690 F.Supp.3d 708, 728 (W.D. Tex. 2023). Even if that is true, the President now agrees with the Governor's declaration of invasion "at the southern border" and that the federal government "failed in fulfilling [its] obligation" under Article IV, Section 4 of the Constitution. Proclamation No. 10,888, 90 Fed. Reg. 8,333 (Jan. 20, 2025).

Accordingly, it is easy to imagine a single application of S.B. 4 that would not be preempted by federal statutes—namely, applying it to incapacitate a hostile non-state actor fomenting the invasion of sovereign territory declared by the Governor *and* the President. *United States v. Rahimi*, 602 U.S. 680, 693 (2024).

11

## CONCLUSION

The Court should grant a stay because the principles undergirding our Constitution counsel against extending *Arizona*, later separate-sovereigns precedent blesses concurrent state criminal laws, and a non-justiciable constitutional defense trumps plaintiffs' statutory preemption claim.

Respectfully submitted.

GREG ABBOTT
Governor of Texas

/s/ Trevor W. Ezell
TREVOR W. EZELL
General Counsel
State Bar No. 24109849
Trevor.Ezell@gov.texas.gov

JASON T. BRAMOW
Deputy General Counsel

*Counsel for Amicus Curiae*
*Governor Greg Abbott*

## CERTIFICATE OF SERVICE

On May 28, 2026, this brief was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court. Counsel further certifies that: (1) any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; (2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1; and (3) the document has been scanned with the most recent version of Microsoft Defender and is free of viruses.

/s/ Trevor W. Ezell
TREVOR W. EZELL

## CERTIFICATE OF COMPLIANCE

This brief complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 29(a)(5) because it contains 2,599 words, excluding the parts of the brief exempted by Rule 32(f); and (2) the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Calisto MT) using Microsoft Word (the same program used to calculate the word count).

/s/ Trevor W. Ezell
TREVOR W. EZELL