No. 26-50418 cons. with No. 26-50469

# In the United States Court of Appeals for the Fifth Circuit

L.M.L. and K.G.S., on behalf of themselves and all those similarly situated,

*Plaintiffs-Appellees*,

*v.*

Freeman F. Martin, in his official capacity as Director of the State of Texas Department of Public Safety,

*Defendant–Appellant*.

On Appeal from the United States District Court for the Western District of Texas, Austin Division

## APPELLANT'S OPENING BRIEF


Ken Paxton
Attorney General of Texas

Brent Webster
First Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
(512) 936-1700

William R. Peterson
Solicitor General

Daniel M. Ortner
Assistant Solicitor General
Daniel.Ortner@oag.texas.gov

D. Bowie Duncan
Assistant Solicitor General

*Counsel for Defendant–Appellant*

## Certificate of Interested Persons

Nos. 26-50418 and 26-50469

L.M.L. and K.G.S., on behalf of themselves and all those similarly situated,

*Plaintiffs-Appellees*,

v.

Freeman F. Martin, in his official capacity as Director of the State of Texas Department of Public Safety,

*Defendant–Appellant.*

Under the fourth sentence of Fifth Circuit Rule 28.2.1, Appellant, as a governmental party, need not furnish a certificate of interested persons.

/s/ Daniel M. Ortner
Daniel M. Ortner

*Counsel for Defendant–Appellant*

## Statement Regarding Oral Argument

The district court preliminarily enjoined enforcement of a state law designed to combat illegal immigration in Texas and provisionally certified a class of "all noncitizens who now or in the future enter, attempt to enter, or are found in" Texas after having been removed from the United States. ROA.1258. Appellant respectfully submits that oral argument would assist the Court in resolving the important jurisdictional, statutory, and constitutional issues presented in this case.

# Table of Contents


Page

Certificate of Interested Persons .......... i
Statement Regarding Oral Argument .......... ii
Table of Authorities .......... v
Statement of Jurisdiction .......... 1
Issues Presented .......... 2
Introduction .......... 3
Statement of the Case .......... 5
Summary of the Argument .......... 11
Standard of Review .......... 14
Argument .......... 15
- I. Plaintiffs Lack Standing to Challenge the Return Order Provisions. .......... 15
  - A. Plaintiffs' alleged injury from return orders is speculative and depends on the actions of independent third parties. .......... 15
  - B. Plaintiffs have not alleged any intention to violate Section 51.04. .......... 17
  - C. Article 5B.002(b) benefits rather than harms Plaintiffs. .......... 18
- II. Texas's Invocation of the Self-Defense Clause Presents a Non-Justiciable Political Question. .......... 19
- III. Plaintiffs Are Unlikely to Prevail on the Merits. .......... 21
  - A. S.B.4 is not field preempted. .......... 23
  - B. The challenged provisions of S.B.4 do not conflict with federal immigration law. .......... 28
- IV. The Remaining Factors Do Not Support a Preliminary Injunction. .......... 35
- V. The District Court Erroneously Certified a Provisional Class. .......... 36
  - A. The district court did not perform the required "rigorous" analysis under Rule 23. .......... 38
  - B. The class of noncitizens is not ascertainable. .......... 40

C. The class representatives' claims are not typical, and they could not adequately represent the class .......... 42
Conclusion .......... 44
Certificate of Compliance .......... 45

# Table of Authorities

Page(s)

**Cases:**

*Altria Grp., Inc. v. Good*,
555 U.S. 70 (2008) .... 22

*Anibowei v. Morgan*,
70 F.4th 898 (5th Cir. 2023).... 14

*Arizona v. United States*,
567 U.S. 387 (2012).... *passim*

*Baker v. Carr*,
369 U.S. 186 (1962) .... 20

*Barrosse v. Huntington Ingalls, Inc.*,
70 F.4th 315 (5th Cir. 2023) .... 23

*Bell Atl. Corp. v. AT&T Corp.*,
339 F.3d 294 (5th Cir. 2003) .... 36

*Big Tyme Invs., L.L.C. v. Edwards*,
985 F.3d 456 (5th Cir. 2021).... 35

*Braidwood Mgmt., Inc. v. Equal Emp. Opportunity Comm'n*,
70 F.4th 914 (5th Cir. 2023) .... 13, 40

*California v. Zook*,
336 U.S. 725 (1949) .... 30

*Career Counseling, Inc. v. AmeriFactors Fin. Grp., LLC*,
91 F.4th 202 (4th Cir. 2024) .... 41

*Chamber of Commerce v. Whiting*,
563 U.S. 582 (2011).... 30

*Cipollone v. Liggett Grp., Inc.*,
505 U.S. 504 (1992).... 22

*City of Burbank v. Lockheed Air Terminal Inc.*,
411 U.S. 624 (1973) .... 26

*City of Philadelphia v. New Jersey*,
430 U.S. 141 (1977) .... 21

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013).... 11, 16, 17

*Computer & Commc'ns Indus. Ass'n v. Paxton*,
184 F.4th 420 (5th Cir. 2026).... 17

*Crosby v. Nat'l Foreign Trade Council*,
530 U.S. 363 (2000) .......... 33
*Crystal Clear Special Util. Dist. v. Jackson*,
142 F.4th 351 (5th Cir. 2025) .......... 23, 28
*CSX Transp., Inc. v. Easterwood*,
507 U.S. 658 (1993) .......... 28
*Deanda v. Becerra*,
96 F.4th 750 (5th Cir. 2024) .......... 22
*Deep South Center for Environmental Justice v. EPA*,
138 F.4th 310 (5th Cir. 2025) .......... 17
*Dickinson v. Trump*,
174 F.4th 634 (9th Cir. 2026) .......... 13, 39
*Escobar Molina v. U.S. Dep't of Homeland Sec.*,
811 F. Supp. 3d 1 (D.D.C. 2025) .......... 39
*Fla. Lime & Avocado Growers, Inc. v. Paul*,
373 U.S. 132 (1963) .......... 23
*Frey v. First Nat'l Bank Sw.*,
602 F. App'x 164 (5th Cir. 2015) .......... 40, 41, 42
*Friberg v. Kan. City S. Ry. Co.*,
267 F.3d 439 (5th Cir. 2001) .......... 23
*Gen. Tel. Co. of Sw. v. Falcon*,
457 U.S. 147 (1982) .......... 38
*Glass v. Paxton*,
900 F.3d 233 (5th Cir. 2018) .......... 16, 17
*Hines v. Davidowitz*,
312 U.S. 52 (1941) .......... 28
*In re Deepwater Horizon*,
785 F.3d 1003 (5th Cir. 2015) .......... 43
*In re Gee*,
941 F.3d 153 (5th Cir. 2019) .......... 15, 18
*In re Monumental Life Ins. Co.*,
365 F.3d 408 (5th Cir. 2004) .......... 40
*Iowa Migrant Movement for Justice v. Bird*,
166 F.4th 688 (8th Cir. 2026) .......... 30
*Jenkins v. Raymark Industries, Inc.*,
782 F.2d 468 (5th Cir. 1986) .......... 43

*John v. Nat'l Sec. Fire & Cas. Co.*,
501 F.3d 443 (5th Cir. 2007) .... 36
*Kansas v. Garcia*,
589 U.S. 191 (2020) .... *passim*
*Kurns v. R.R. Friction Prods. Corp.*,
565 U.S. 625 (2012) .... 26
*Luftig v. McNamara*,
373 F.2d 664 (D.C. Cir. 1967) .... 20
*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) .... 15
*M.D. ex rel. Stukenberg v. Perry*,
675 F.3d 832 (5th Cir. 2012) .... 14, 36, 38, 39
*Marcus v. BMW of N. Am., LLC*,
687 F.3d 583 (3d Cir. 2012) .... 41
*Martin v. Mott*,
25 U.S. 19 (1827) .... 20
*Mayor of New York v. Miln*,
36 U.S. 102 (1837) .... 22
*McRaney v. N. Am. Mission Bd. of the S. Baptist Convention, Inc.*,
157 F.4th 627(5th Cir. 2025) .... 21
*Moyer v. Peabody*,
212 U.S. 78 (1909) .... 21
*Mullen v. Treasure Chest Casino, LLC*,
186 F.3d 620 (5th Cir. 1999) .... 44
*NAACP v. Tindell*,
95 F.4th 212 (5th Cir. 2024) .... 14
*Newsom v. Trump*,
141 F.4th 1032 (9th Cir. 2025) .... 20
*Nken v. Holder*,
556 U.S. 418 (2009) .... 35
*Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*,
461 U.S. 190 (1983) .... 26
*Paxton v. Dettelbach*,
105 F.4th 708 (5th Cir. 2024) .... 17, 18
*Rice v. Santa Fe Elevator Corp.*,
331 U.S. 218 (1947) .... 22, 26

*Schneidewind v. ANR Pipeline Co.*,
485 U.S. 293 (1988) .......... 26
*Smith v. Turner*,
48 U.S. (7 How.) 283 (1849) .......... 19
*Sterling v. Constantin*,
287 U.S. 378 (1932) .......... 20
*Stirman v. Exxon Corp.*,
280 F.3d 554 (5th Cir. 2002) .......... 42, 43, 44
*Texas v. DHS*,
123 F.4th 186 (5th Cir. 2024) .......... 5
*Texas v. DHS*,
No. DR-23-CV-00055-AM, 2023 WL 8285223
(W.D. Tex. Nov. 29, 2023) .......... 5
*TitleMax of Tex., Inc. v. City of Dallas*,
142 F.4th 322 (5th Cir. 2025) .......... 14
*Trump v. California*,
No. 26A124, 2026 WL 2473573
(U.S. Aug. 24, 2026) .......... 16
*Trump v. CASA, Inc.*,
606 U.S. 831 (2025) .......... 39
*United States v. Abbott*,
110 F.4th 700 (5th Cir. 2024) .......... 21
*United States v. Flores-Montano*,
541 U.S. 149 (2004) .......... 22
*United States v. Gutierrez-Alba*,
128 F.3d 1324 (9th Cir. 1997) .......... 31
*United States v. Hansen*,
599 U.S. 762 (2023) .......... 29
*United States v. Locke*,
529 U.S. 89 (2000) .......... 26
*United States v. Rahimi*,
602 U.S. 680 (2024) .......... 28, 33
*United States v. Texas*,
144 F.4th 632 (5th Cir. 2025) .......... *passim*
*United States v. Texas*,
173 F.4th 659 (5th Cir. 2026) .......... *passim*

*United States v. Texas*,
719 F. Supp. 3d 640 (W.D. Tex. 2024) .......... 7
*United States v. Texas*,
97 F.4th 268 (5th Cir. 2024) .......... 7
*United States v. Texas*,
No. 24-50149 (5th Cir. Apr. 3, 2024) .......... 6, 20, 25
*Va. Uranium Inc. v. Warren*,
587 U.S. 761 (2019) .......... 23, 24, 27, 28
*Veasey v. Abbott*,
870 F.3d 387 (5th Cir. 2017) .......... 35
*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) .......... 36, 38
*Wang v. Paxton*,
161 F.4th 357 (5th Cir. 2025) .......... 11, 15, 17
*Zimmerman v. City of Austin*,
881 F.3d 378 (5th Cir. 2018) .......... 17
*Zyla Life Scis., L.L.C. v. Wells Pharma of Hou., L.L.C.*,
134 F.4th 326 (5th Cir. 2025) .......... *passim*

**Constitutional Provisions, Statutes and Rules:**

U.S. Const.
art. I § 10 .......... 11, 19
art. IV § 4 .......... 20
art. VI .......... 30
8 U.S.C.
§ 1225(b)(1)(A)(i) .......... 32
§ 1229a(d) .......... 32
§ 1229c(a)(1) .......... 25, 31
§ 1252c(a) .......... 25, 31
§ 1253 .......... 31
§ 1324(c) .......... 25
§ 1324d .......... 31
§ 1325(a) .......... 5
§ 1326 .......... 31
§ 1326(a) .......... 5, 30
§ 1357(g) .......... 25

§ 1358 .......... 25
18 U.S.C. § 758 .......... 25
28 U.S.C.
§ 1292(a)(1) .......... 1
§ 1331 .......... 1
Fed. R. Civ. P.
23(a) .......... *passim*
23(b) .......... *passim*
23(f) .......... 1, 6
Tex. Const. art. IV § 7 .......... 19
Tex. Code Crim. Proc.
art. 5B.002 .......... *passim*
art. 5B.003 .......... 6, 8, 9, 31
Tex. Penal Code
§ 51.02 .......... *passim*
§ 51.03 .......... *passim*
§ 51.04 .......... *passim*

**Other Authorities:**

Act of Nov. 14, 2023, 88th Leg., 4th C.S., ch. 2, 2023 Tex. Gen. Laws 4750 (S.B.4) .......... 5
Governor of the State of Texas, Executive Order GA-41, 47 Tex. Reg. 4213 (July 7, 2022) .......... 11
H.R. Rep. No. 44-343, XV-XVI (1st Sess. 1876) .......... 19-20
Statement of Tex. Governor Greg Abbott (Jan. 24, 2024) .......... 19
2 William B. Rubenstein, Newberg and Rubenstein on Class Actions § 4:30 (6th ed., June 2026 update) .......... 39, 40
William Barr, *The U.S. Must Defeat Mexico's Drug Cartels*, Wall St. J. (Mar. 2, 2023) .......... 19

## Statement of Jurisdiction

Plaintiffs invoked the district court's subject-matter jurisdiction under 28 U.S.C. § 1331. ROA.13. This Court has jurisdiction over this appeal of the grant of a preliminary injunction under 28 U.S.C. § 1292(a)(1). Defendant's appeal is timely because the preliminary injunction was entered on May 14, 2026, ROA.1270–71, and Defendant noticed his appeal on May 18, ROA.1272.

On June 9, 2026, this Court granted Defendant's timely request for permission to appeal the district court's class certification decision under Federal Rule of Civil Procedure 23(f). *L.M.L. v. Martin*, No. 26-50469, Dkt. No. 5.

## Issues Presented

1. Whether Plaintiffs have standing to challenge the return order provisions of S.B.4.
2. Whether S.B.4 falls within the State's constitutional powers of self-defense pursuant to a declared invasion.
3. Whether Plaintiffs have established a likelihood of success on the merits of their claim that S.B.4 is preempted by federal immigration law.
4. Whether Plaintiffs established that the other preliminary injunction factors support an injunction.
5. Whether the district court abused its discretion by provisionally certifying a class under Rule 23 for the purpose of providing broad injunctive relief.

## Introduction

This Court recently acknowledged the tremendous damage unchecked illegal immigration caused in Texas, noting the "jarring statistics of the human toll." *United States v. Texas*, 173 F.4th 659, 662 (5th Cir. 2026) (en banc) (*Texas IV*). These statistics include "more than 6 million illegal aliens" that flooded Texas's borders from 2021–2023, the arrest of "over 15,000 illegal aliens with criminal convictions," the apprehension of "roughly 2,000 gang members," and the devastating effects of illegally smuggled fentanyl and human trafficking. *Id.*

Texas enacted Texas Senate Bill 4 (S.B.4) to respond to this crisis. This law gives the State tools needed to effectively mitigate the negative effects of illegal immigration, and prevent cross-border drug trafficking and other crimes. The law parallels federal immigration law, empowering state officials to prosecute individuals for illegal entry and reentry into Texas.

Before the law could go into effect, its enforcement was enjoined as a result of several legal challenges. This Court, sitting en banc, recently held that the plaintiffs in one of those challenges lacked standing and vacated a preliminary injunction granted in their favor. *Id*. But before the mandate in that case issued, Plaintiffs filed this class action lawsuit against Director Freeman Martin of the Texas Department of Public Safety, seeking to enjoin enforcement of aspects of S.B.4. After "provisionally" certifying a large, unascertainable class of all those who illegally reentered and will reenter the State of Texas, the district court enjoined enforcement of the challenged provisions in all their applications against all members of the class.

The federal constitution does not prevent Texas from prosecuting illegal border crossings in a manner that parallels federal law. Congress has not comprehensively occupied the field and has instead left room for significant state cooperation and enforcement. And Texas's law does not conflict with federal law in all of its applications. Accordingly, the preliminary injunction was improper.

Nor should the district court have granted provisional class certification, particularly since the members of the class are not ascertainable, Plaintiffs' claims are not typical of the class, and Plaintiffs would not adequately represent the class.

## Statement of the Case

Between 2020 and 2022, illegal border crossings increased fivefold, from 458,000 in 2020 to 2.4 million in 2022, with Texas bearing the heavy brunt of those crossings. *Texas v. DHS*, No. DR-23-CV-00055-AM, 2023 WL 8285223, at *3 (W.D. Tex. Nov. 29, 2023); *Texas v. DHS,* 123 F.4th 186, 192 (5th Cir. 2024) (noting that the Eagle Pass area of Texas was "an epicenter of millions of unlawful entries into Texas"). Violent transnational cartels came to dominate the border, trafficking humans and smuggling "vast quantities" of illegal drugs like fentanyl into the United States. *Texas*, 123 F.4th at 193.

In response to this unprecedented border crisis, Texas enacted Senate Bill 4 in 2023. Act of Nov. 14, 2023, 88th Leg., 4th C.S., ch. 2, 2023 Tex. Gen. Laws 4750 (S.B.4). S.B.4 amends Chapter 51 of the Texas Penal Code to include two state offenses that track federal immigration crimes prohibiting unlawful entry and reentry. *Compare* Tex. Penal Code §§ 51.02(a), 51.03(a)*, with* 8 U.S.C. §§ 1325(a), 1326(a). The first, Section 51.02(a), criminalizes entering the State of Texas "directly from a foreign nation at any location other than a lawful port of entry." Tex. Penal Code § 51.02(a). Plaintiffs have not challenged this provision, and it is not at issue in this appeal.

The second, Section 51.03(a), criminalizes reentering the country after being "denied admission to" or "excluded, deported, or removed" from the United States or after departing while an order of exclusion, deportation, or removal is outstanding. *Id.* § 51.03(a)(1). A prosecution under these sections may not be abated merely

because a federal determination regarding an individual's immigration status is pending. Tex. Code Crim. Proc. art. 5B.003.

If a person charged with violating Sections 51.02 or 51.03 agrees, a court may dismiss the charge and enter a written order (referred to as a "return order") "requir[ing] the person to return to the foreign nation from which the person entered or attempted to enter." *Id.* art. 5B.002(d). If a person is convicted of an offense under chapter 51, the court is instructed to enter a return order that takes effect after confinement or imprisonment. *Id.* Texas officials have "consistently represented that they will coordinate with federal immigration authorities if aliens have return orders or pending asylum applications," *Texas IV*, 173 F.4th at 663, and enforce return orders by transferring control of aliens to federal immigration officials at a lawful point of entry.

It is a criminal offense to "refuse[] to comply with" a return order. Tex. Penal Code § 51.04(a). "Refusal" does not include situations in which the foreign nation declines to accept the person or the person otherwise cannot comply. *See* Oral Argument at 5:11–6:13, *United States v. Texas*, No. 24-50149 (5th Cir. Apr. 3, 2024);[1] En Banc Oral Argument at 20:28–45, *United States v. Texas*, No. 24-50149 (5th Cir. Jan. 22, 2026).[2]

---

[1] https://www.ca5.uscourts.gov/OralArgRecordings/24/24-50149_4-3-2024.mp3.

[2] https://www.ca5.uscourts.gov/OralArgRecordings/24/24-50149_01-22-2026.mp3.

Immediately after S.B.4 was enacted in 2023, Governor Abbott, Director Martin, and other Texas officials were sued in the Western District of Texas. The district court entered a preliminary injunction in February 2024. *United States v. Texas*, 719 F. Supp. 3d 640 (W.D. Tex. 2024). A panel of this court denied a stay, *United States v. Texas*, 97 F.4th 268 (5th Cir. 2024), and ruled against the State, *United States v. Texas*, 144 F.4th 632 (5th Cir. 2025) (*Texas III*). But this Court sitting en banc recently held that the plaintiffs in that case lacked standing and vacated the injunction. *Texas IV*, 173 F.4th at 662.

But before the mandate from the en banc court issued, Plaintiffs L.M.L. and K.G.S. filed this new action on behalf of themselves and a putative class. ROA.11–23. Plaintiffs argue that the illegal reentry and return order provisions of S.B.4 are preempted by federal immigration law. ROA.21–22. L.M.L. was previously deported, and K.G.S. left the United States before a deportation order could be entered against her. ROA.58 (¶ 5), ROA.62 (¶ 5). Both claim they reentered the United States without legal permission. ROA.13 (¶¶ 8–9). Both now contend they are lawfully present in the United States: L.M.L. claims that he is a lawful permanent resident, and K.G.S. claims she has "been approved for a U-visa." ROA.13 (¶¶ 8–9).[3]

Plaintiffs moved for provisional certification of a class of:

[3] During her deposition, K.G.S. clarified that she has received "preapproval" (a bona fide determination) but is still waiting for final approval of her pending U-visa application. ROA.1167; *accord* ROA.1196.

> All noncitizens who now or in the future enter, attempt to enter, or are found in the state of Texas after they have been denied admission to or excluded, deported, or removed from the United States, or after they have departed from the United States while an order of exclusion, deportation, or removal was outstanding.

ROA.461. Plaintiffs also sought a preliminary injunction against enforcement of Sections 51.03 and 51.04 of the Texas Penal Code and Articles 5B.002 and 5B.003 of the Texas Code of Criminal Procedure. ROA.30–57.

Director Martin opposed provisional class certification and asked the district court to continue or defer determination of that motion. ROA.565; ROA.587–606. He also opposed the request for a preliminary injunction, ROA.569-85; ROA.607–847, and moved to dismiss Plaintiffs' complaint on jurisdictional grounds, ROA.554–63. Director Martin also asked the district court to stay any injunctive relief pending appeal to this Court. ROA.623.

Director Martin requested and was granted limited discovery, including depositions "narrowly tailored to address questions related to Plaintiffs' standing and to test assertions made in the Plaintiffs' Declarations." ROA.915.

The United States filed a Statement of Interest expressing its position that the challenged provisions of S.B.4 are not preempted by federal law. ROA.919–41.

The district court held a preliminary injunction hearing on May 13, 2026. ROA.9; ROA.1297–1400. It granted provisional class certification and issued a preliminary injunction on May 14, adhering to its view that the challenged provisions of S.B.4 were preempted. ROA.1194–1271.

In its order, the district court found that Plaintiffs had standing to challenge S.B.4, that Director Martin was not entitled to sovereign immunity, and that the case did not present a non-justiciable political question. ROA.1208–24. With respect to the preliminary-injunction factors, the district court found that Plaintiffs were likely to succeed on the merits of their claim that the challenged provisions were preempted under both field and conflict preemption theories. ROA.1225–50. It also found that Plaintiffs would suffer irreparable harm because of the threat of enforcement of S.B.4 against them and that the balance of the equities favored preliminary relief. ROA.1256–57.

With respect to class certification, the district court found that Rule 23's requirements were satisfied and agreed to "provisionally" certify the class of non-citizens set out above. ROA.1257–66. In doing so, it stated that "this certification is for provisional purposes only for the purposes of injunctive relief, and further inquiry into the appropriateness of formally certifying the class should be conducted." ROA.1266.

The district court granted preliminary relief to the provisional class. Specifically, it preliminarily enjoined Defendant Martin "from enforcing Texas Penal Code §§ 51.03 and 51.04 and Tex. Code Crim. Proc. Ann. arts. 5B.002 and 5B.003," ROA.1270, "against members of the provisional class," ROA.1266.

Director Martin filed a timely interlocutory appeal, ROA.1272–73, and sought a stay of the preliminary injunction pending appeal, which this Court granted on May 29, 2026, Dkt. No. 50.

Out of an abundance of caution, Director Martin also filed a petition for review of the district court's class certification decision under Rule 23(f). *See L.M.L. v. Martin*, No. 26-50469. This Court granted that petition and consolidated the appeals. *Id.*, Dkt. No. 5.

## Summary of the Argument

Plaintiffs lack standing to challenge the return order provisions of S.B.4 (Article 5B.002 and Section 51.04). Because neither individual Plaintiff is currently the subject of a return order, neither could be prosecuted for violating Section 51.04. To be prosecuted under that provision, Plaintiffs would need to have previously been prosecuted under Section 51.02 or Section 51.03, have been issued a return order by a judge, and then have "refuse[d] to comply" with the return order. *See* Tex. Penal Code § 51.04(a)(3). Such a "speculative chain of possibilities" shows that these Plaintiffs lack any "actual or imminent" injury from Section 51.04 that is "certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409, 414 (2013).

Plaintiffs' purported injury is also speculative because it turns on how "independent decisionmakers . . . will exercise their judgment." *Id.* at 413. And even if Plaintiffs were subject to a return order, neither individual Plaintiff alleges an "inten[t] to engage in a course of conduct"—*i.e.*, an intent to refuse to comply with a return order—that is "arguably proscribed" by Section 51.04. *See Wang v. Paxton*, 161 F.4th 357, 359 (5th Cir. 2025).

Plaintiffs' claims also fail because S.B.4 falls within the Self-Defense Clause of the United States Constitution, U.S. Const. art. I, § 10, cl. 3, a non-justiciable political question. Governor Abbott has declared—and the President agrees—that the border crisis constitutes an invasion. Governor of the State of Texas, Executive Order GA-41, 47 Tex. Reg. 4213, 4214 (July 7, 2022).

If this Court reaches the merits, Plaintiffs are not likely to prevail. Congress has not occupied the entire field of immigration enforcement. In *Arizona v. United States*,

the Supreme Court held that Congress "occupied the field of alien registration" by "provid[ing] a full set of standards governing alien registration" that were "designed as a harmonious whole." 567 U.S. 387, 401 (2012) (internal citations omitted). But the Supreme Court did not hold that all of Arizona's challenged laws touching on other aspects of immigration were subject to field preemption, holding instead that two were subject to conflict preemption and one was not preempted at all.

Unlike alien registration, Congress has not comprehensively occupied the field of immigration enforcement. To the contrary, federal law invites extensive state cooperation. And Texas's law complements, rather than conflicts with, federal immigration law. At a minimum, there are some lawful applications of the provisions of S.B.4, particularly when enforcement is undertaken in cooperation with the federal government. This means that Plaintiffs' facial challenge must fail.

The other factors do not support a preliminary injunction. The State suffers irreparable injury whenever it is enjoined from enforcing its laws, and Plaintiffs' purported harms are speculative and attenuated. The preliminary injunction also interferes with Texas's ability to protect its border and its citizens from transnational cartels, drug and human trafficking, and other serious harms.

The district court abused its discretion by provisionally certifying a class of "[a]ll noncitizens who now or in the future enter, attempt to enter, or are found in the state of Texas after they have been denied admission to or excluded, deported, or removed from the United States." For a plaintiff to obtain certification under Rule 23(b)(2), the district court must find, following a rigorous analysis, that the class is ascertainable and that all the requirements of Rule 23(a)—numerosity,

commonality, typicality, and adequacy—and of 23(b)(2) are satisfied. *See Braidwood Mgmt., Inc. v. Equal Emp. Opportunity Comm'n*, 70 F.4th 914, 933 (5th Cir. 2023). "[S]o-called provisional classes, even assuming that they are valid," are subject to the same "demanding requirement[s]" under Rule 23 as ordinary classes. *Dickinson v. Trump*, 174 F.4th 634, 646 (9th Cir. 2026). In provisionally certifying a class in this case, the district court failed to conduct a rigorous analysis and, as a result, erroneously determined that the proposed class was ascertainable, that the named Plaintiffs' claims were typical of the class, and that the named Plaintiffs would adequately represent the class.

## Standard of Review

This Court reviews the district court's decision granting a preliminary injunction for abuse of discretion. *Anibowei v. Morgan*, 70 F.4th 898, 902 (5th Cir. 2023). But the district court's conclusions of law "are subject to broad review and will be reversed if incorrect." *Id.* Thus, although "the ultimate decision whether to grant or deny a preliminary injunction is reviewed only for abuse of discretion, a decision grounded in erroneous legal principles is reviewed de novo." *TitleMax of Tex., Inc. v. City of Dallas*, 142 F.4th 322, 328 (5th Cir. 2025).

To secure a preliminary injunction, plaintiffs are required to show that they are substantially likely to succeed on the merits, that enforcement of the challenged law will subject them to an irreparable injury, that the balance of hardships weighs in their favor, and that the public interest favors injunctive relief. *Anibowei*, 70 F.4th at 902. "[A] preliminary injunction is an extraordinary and drastic remedy which should not be granted unless the movant clearly carries the burden of persuasion" on all four elements. *Id.* "[P]laintiffs must make a clear showing that they have standing to maintain the preliminary injunction, for an injunction is always improper if the district court lacks jurisdiction." *NAACP v. Tindell*, 95 F.4th 212, 216 (5th Cir. 2024) (citation and quotation marks omitted).

This Court "review[s] the district court's decision to certify a class for an abuse of discretion." *M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 836 (5th Cir. 2012). The district court's discretion to certify a class must be exercised "within the framework of Rule 23." *Id.* (citation omitted).

## Argument

### I. Plaintiffs Lack Standing to Challenge the Return Order Provisions.

Plaintiffs, who are not subject to return orders and do not allege that they intend to violate return orders, lack standing to challenge Article 5B.002, which governs the issuance of return orders, and Section 51.04, which concerns the failure to comply with return orders.

Article III standing requires plaintiffs to allege an injury in fact—*i.e.*, an invasion of a "legally protected interest" that is "concrete and particularized" and "actual or imminent." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

Standing is not dispensed in gross. Rather, "plaintiffs must establish standing for each and every provision they challenge." *In re Gee*, 941 F.3d 153, 160 (5th Cir. 2019) (orig. proceeding) (per curiam). Even if Plaintiffs have adequately alleged an injury based on "a substantial threat of future enforcement" of the illegal reentry provisions, *Wang*, 161 F.4th at 362, that is not enough to give them standing to challenge the return order provisions.

Plaintiffs lack standing because 1) any injury from these provisions is speculative and based on the independent actions of third parties; 2) Plaintiffs do not allege any intention to violate Section 51.04; and 3) Article 5B.002(b) only benefits rather than injures them.

#### A. Plaintiffs' alleged injury from return orders is speculative and depends on the actions of independent third parties.

When an "allegation of harm involves a 'chain of contingencies,'" this Court must "identify each contingency," and "[e]ach link in the chain of contingencies

must be 'certainly impending' to confer standing." *Glass v. Paxton*, 900 F.3d 233, 239 (5th Cir. 2018) (quoting *Clapper*, 568 U.S. at 410).

To be subject to a return order under Article 5B.002, Plaintiffs would have to 1) be arrested for violating Section 51.02 or Section 51.03 and 2) either be convicted under one of those provisions or agree to the entry of a voluntary return order. To be prosecuted for violating Section 51.04, Plaintiffs would also need to 1) serve any applicable prison time (if they did not agree to a voluntary return order), 2) be delivered to federal immigration authorities, 3) be capable of returning to the foreign nation from which the Plaintiff entered Texas, and 4) refuse to return.

None of the steps in the chain of contingencies is "certainly impending," let alone all of them. Indeed, it is presently impossible for Plaintiffs to be prosecuted for violating Section 51.04 because an entire antecedent criminal prosecution would have to occur. Plaintiffs would then have to choose to violate a provision of that presently non-existent judgment by "refus[ing] to comply with" a return order. *See* Tex. Penal Code § 51.04(a)(3).

That "speculative chain of possibilities" shows that these Plaintiffs lack any "actual or imminent" injury that is "certainly impending" regarding enforcement of Section 51.04. *Clapper*, 568 U.S. at 409, 414. Rather, Plaintiffs state only "allegations of possible future injury" as to that provision. *Id.* at 409. "But Article III prohibits federal courts from stacking hypothetical on hypothetical to speculate that harm will eventually materialize." *Trump v. California*, No. 26A124, 2026 WL 2473573, at *2 (U.S. Aug. 24, 2026) (per curiam).

Plaintiffs' purported injury is further speculative because it "depends in large part on the action of third-part[ies]." *Zimmerman v. City of Austin*, 881 F.3d 378, 390 (5th Cir. 2018); *see also Computer & Commc'ns Indus. Ass'n v. Paxton*, 184 F.4th 420, 433 (5th Cir. 2026) ("[A]n injury cannot be the result of the independent action of some third party not before the court."). Plaintiffs' purported injury turns on how "independent decisionmakers," including prosecutors, federal immigration officials, and the Mexican government, "will exercise their judgment." *Clapper*, 568 U.S. at 413.

In *Deep South Center for Environmental Justice v. EPA*, this Court followed *Clapper* in holding that there was no Article III standing when an injury depended on whether Louisiana would issue a permit because that was "a decision of independent actors" and the plaintiffs could "only speculate about how Louisiana will operate its program and grant [the] permits." 138 F.4th 310, 321–22 (5th Cir. 2025) (cleaned up). And in *Glass v. Paxton*, this Court held that a professor's First Amendment claims were barred because they depended on the "independent decision-making" of students bringing firearms to class. 900 F.3d at 241. Just like the injuries in *Clapper*, *Deep South*, and *Glass*, any injury under the return order provision is speculative and cannot support standing.

### B. Plaintiffs have not alleged any intention to violate Section 51.04.

Even assuming that Plaintiffs were subject to a return order, neither individual Plaintiff even alleges an "inten[t] to engage in a course of conduct" that is "arguably proscribed" by Section 51.04. *Wang*, 161 F.4th at 359; *Paxton v. Dettelbach*, 105 F.4th 708, 712 (5th Cir. 2024). Plaintiffs do not even allege that if they were convicted

under Section 51.02 or Section 51.03 and subject to a return order, they would subsequently choose to disobey the order.

But "refus[ing] to comply with" a return order is the *only* way that Plaintiffs could ever be convicted of violating Section 51.04. Tex. Penal Code § 51.04(a)(3). Because Plaintiffs "have failed to show that their intended conduct is within the scope of what [Section 51.04] prohibits," they "lack standing to bring their pre-enforcement challenge." *Dettelbach*, 105 F.4th at 712.

### C. Article 5B.002(b) benefits rather than harms Plaintiffs.

Plaintiffs also lack standing to challenge Article 5B.002(b). Article III does not allow plaintiffs to challenge a provision that "benefit[s] rather than harm[s]" them. *In re Gee*, 941 F.3d at 165 (abortion providers lacked standing to challenge provisions that benefited rather than hindered women).

Article 5B.002 allows a judge to enter a return order in lieu of prosecution and criminal penalty if the individual voluntarily agrees to it and other conditions are satisfied. This provision does not injure Plaintiffs because it is voluntary. Indeed, this provision only benefits Plaintiffs since it gives them an additional option that they can voluntarily agree to in lieu of prosecution for illegal reentry. Plaintiffs cannot explain how a provision that provides them with a voluntary avenue in lieu of prosecution causes them harm.

* * *

For these reasons, Plaintiffs lack standing to challenge the return order provisions, and the preliminary injunction should be reversed to the extent it enjoins enforcement of those provisions.

## II. Texas's Invocation of the Self-Defense Clause Presents a Non-Justiciable Political Question.

S.B.4 cannot be facially preempted because, at the least, the law may be applied pursuant to Texas's authority under the Self-Defense Clause of the United States Constitution. U.S. Const. art. I, § 10, cl. 3.

When Texas joined the Union, it did not surrender the "power of self-preservation which must be inherent in every organized community." *Smith v. Turner*, 48 U.S. (7 How.) 283, 400 (1849) (McLean, J.). When a State is "actually invaded, or in such imminent Danger as will not admit of delay," the State is free to exercise its sovereign power to "engage in War" "without the Consent of Congress." U.S. Const. art. I, § 10, cl. 3.

Governor Abbott, as the "Commander-in-Chief of the military forces of the State," Tex. Const. art. IV, § 7, invoked Texas's power to defend itself against transnational cartels engaged in terrorism, human trafficking, and weapons smuggling, *see* Executive Order GA-41, *supra*; Statement of Tex. Governor Greg Abbott (Jan. 24, 2024).[4]

Repelling cartels operating as a "potent paramilitary force" fits squarely within the Self-Defense Clause. William Barr, *The U.S. Must Defeat Mexico's Drug Cartels*, Wall St. J. (Mar. 2, 2023). The concept of an "invasion" was understood broadly by the Framers and early leaders of Texas alike. 3 The Debates in the Several State Conventions on the Adoption of the Federal Constitution 420 (Jonathan Elliot ed., 2d ed. 1836) (John Marshall arguing that the Self-Defense Clause meant that states

---

[4] https://gov.texas.gov/uploads/files/press/Border_Statement_1.24.2024.pdf.

"can use the militia when they find it necessary"); *see* H.R. Rep. No. 44-343, XV-XVI, 13-17, 164-67 (1st Sess. 1876) (Texas Governor invoked the Self-Defense Clause in a letter to the U.S. Attorney General explaining the State was taking defensive measures "to defend the people of Texas against hostile invasion" by criminal gangs entering from Mexico and the U.S. Attorney General "acquiesced in those conclusions"). And the President of the United States agrees "that the current situation at the southern border qualifies as an invasion under Article IV, Section 4 of the Constitution of the United States." *See United States v. Texas*, No. 24-50149 (5th Cir.), Dkt. No. 223 (United States informing this Court of a January 20th proclamation issued by President Trump); Dkt. No. 250 (Texas explaining that the President's "second, non-justiciable finding that invasion conditions exist shows that facial relief was always improper").

Governor Abbott's "good faith" determination of an invasion at the southern border puts this case under the Self-Defense Clause and puts the means that Texas has chosen to utilize outside of the scope of review by federal courts. *See Newsom v. Trump*, 141 F.4th 1032, 1050–51 (9th Cir. 2025) (citing *Sterling v. Constantin*, 287 U.S. 378, 399–400 (1932)); *see also Baker v. Carr*, 369 U.S. 186, 213 (1962) (noting that the Supreme Court has refused to review military questions like "the political departments' determination of when or whether a war has ended" due to "the need for finality in the political determination" because "emergency's nature demands '[a] prompt and unhesitating obedience'" (quoting *Martin v. Mott*, 25 U.S. 19, 20 (1827))); *Luftig v. McNamara*, 373 F.2d 664, 665–66 (D.C. Cir. 1967) ("It is difficult to think of an area less suited for judicial action than . . . the use and disposition of

military power"). After all, if Texas has the power to wage war against invaders, it necessarily has the lesser power to "arrest" them if it deems that the most effective way to respond to the invasion. *See Moyer v. Peabody*, 212 U.S. 78, 82–85 (1909) (Holmes, J.) (holding that the governor's power to "repel invasion" included the power to arrest individuals "to prevent the exercise of hostile power"). Because at least some applications of S.B.4 fall within Texas's self-defense authority (a non-justiciable political question), Plaintiffs' claim that S.B.4 is facially invalid fails.[5]

## III. Plaintiffs Are Unlikely to Prevail on the Merits.

Even if the district court had jurisdiction, the district court's preliminary-injunction order should be reversed because Plaintiffs are unlikely to succeed on the merits of their preemption argument.

"All preemption has a constitutional source: the Supremacy Clause." *Zyla Life Scis., L.L.C. v. Wells Pharma of Hou., L.L.C.*, 134 F.4th 326, 328 (5th Cir. 2025) (citing *City of Philadelphia v. New Jersey*, 430 U.S. 141, 142 (1977) (per curiam)). And "[u]nder the Supremacy Clause, any state law that contradicts federal law is preempted." *Id.* (citing U.S. Const. art. VI, cl. 2). "But barring any contradiction, the States retain their sovereign prerogatives to regulate." *Id.*

---

[5] Whether the presence of this non-justiciable political question within the case deprives a court of jurisdiction over the case as a whole is unclear. *Compare United States v. Abbott*, 110 F.4th 700, 725 (5th Cir. 2024) (Ho, J., concurring in the judgment in part and dissenting in part), *with id.* at 723 (Oldham, J., concurring), *and McRaney v. N. Am. Mission Bd. of the S. Baptist Convention, Inc.*, 157 F.4th 627, 645 (5th Cir. 2025) (distinguishing between a defense "beyond the power and cognizance of civil courts" and jurisdiction in the "narrower Rule 12(b)(1) sense").

Reflecting this latter principle, "[p]reemption analysis begins 'with the assumption that the historic police powers of the States [are] not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.'" *Deanda v. Becerra*, 96 F.4th 750, 761 (5th Cir. 2024) (quoting *Altria Grp., Inc. v. Good*, 555 U.S. 70, 77 (2008) (second alteration in original)); *see also Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 516 (1992) (instructing that preemption analysis must begin "with the assumption that the historic police powers of the States [are] not to be superseded . . . unless that [is] the clear and manifest purpose of Congress" (alterations in original) (quoting *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230 (1947)).

The district court concluded that the presumption against preemption does not apply because the powers at issue are outside of the State's historic police powers. ROA.1232. But the presumption against preemption applies here because S.B.4 touches upon Texas's "paramount interest in protecting . . . its territorial integrity." *United States v. Flores-Montano*, 541 U.S. 149, 153 (2004). Furthermore, "[r]estrictions on persons entering a State from a foreign country have historically been within the States' domain." *Texas III*, 144 F.4th at 720 (Oldham, J., dissenting) (citing *Mayor of New York v. Miln*, 36 U.S. 102, 132-33 (1837)). Plaintiffs are unable to overcome that presumption.

"Supreme Court precedent establishes a preemption taxonomy." *Zyla*, 134 F.4th at 328. "The first division is between express and implied preemption." *Id.* (citing *Kansas v. Garcia*, 589 U.S. 191, 202-03 (2020)). Only the latter is at issue in this case. "Implied preemption is further divided into two types: field preemption

and conflict preemption." *Id.* (citing *Garcia*, 589 U.S. at 209-11). "[F]ield preemption applies 'where state law intrudes in an area that Congress has reserved for federal jurisdiction.'" *Crystal Clear Special Util. Dist. v. Jackson*, 142 F.4th 351, 364 (5th Cir. 2025) (quoting *Friberg v. Kan. City S. Ry. Co.*, 267 F.3d 439, 442 (5th Cir. 2001)). And conflict preemption applies "(1) where complying with both federal and state law is impossible; or (2) where the state law creates an unacceptable obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* (quoting *Barrosse v. Huntington Ingalls, Inc.*, 70 F.4th 315, 320 (5th Cir. 2023)).

Federal law does not occupy the entire field of all criminal laws touching on immigration, and S.B.4 does not conflict with federal law, particularly in the facial, pre-enforcement posture of this case.

**A. S.B.4 is not field preempted.**

Field preemption applies only where Congress has "occupie[d] an entire field," reflecting "a congressional decision to foreclose any state regulation in the area, even if it is parallel to federal standards." *Arizona v. United States*, 567 U.S. 387, 401 (2012). Nothing short "of an unambiguous congressional mandate to that effect" suffices. *Fla. Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 147 (1963). Field preemption is "rare," *Garcia*, 589 U.S. at 208, because it represents a "serious intrusion into state sovereignty," *Va. Uranium Inc. v. Warren*, 587 U.S. 761, 773 (2019) (lead opinion of Gorsuch, J.).

Plaintiffs claim that the whole field of "entry and removal" is "an exclusively federal field," ROA.42, while the district court found that the entire "field of

immigration" is preempted by federal law, ROA.1226, 1229. But this expansive theory of field preemption is incompatible with precedent and practice.

The Supreme Court has never defined a field so abstractly, based on the presence of "some brooding federal interest." *Garcia*, 589 U.S. at 202 (quoting *Va. Uranium*, 587 U.S. at 767). The Court's opinion in *Arizona v. United States* provides an example of how the analysis is done properly.

In *Arizona*, the Supreme Court carefully analyzed four different provisions of Arizona's S.B.1070 related to illegal immigration, concluding that only one was field preempted due to Congress's "comprehensive" regulation of "the field of alien registration." 567 U.S. at 400–03. Two challenged provisions were preempted because they conflicted with federal law, *id.* at 403–16, and one challenged provision was not preempted at all, even though its application might well conflict with the Attorney General's "federal enforcement priorities," *id.* at 412.

Rather than follow *Arizona*'s careful, provision-by-provision approach to field preemption, the district court in this case defined the field abstractly based on the presence of "some brooding federal interest." *See Garcia*, 589 U.S. at 202. But had the Supreme Court agreed in *Arizona* that Congress had preempted the entire field of "entry and removal" as Plaintiffs claim, this careful provision-by-provision analysis would have been unnecessary. Rather than looking closely at each provision of Arizona's law, the Supreme Court would have declared that because the laws were in the field of "entry and removal," they were preempted in their entirety.

Unlike the field of alien registration in *Arizona*, the federal immigration code is replete with provisions that presuppose state–federal cooperation, refuting any

suggestion that "Congress occupies" the field of entry and removal and leaves no role for the States. Under federal law:

- "State and local law enforcement officials are authorized to arrest and detain an individual who" is "an alien illegally present in the United States," and has been convicted of a felony and previously deported or left the country, 8 U.S.C. § 1252c(a)(1)-(2);
- "The Attorney General may enter into a written agreement with a State" to permit state officials "to perform a function of an immigration officer in relation to the investigation, apprehension, or detention of aliens in the United States," *id.* § 1357(g)(1);[6]
- No agreement with the Attorney General is required for "any officer or employee of a State" to: "communicate with the Attorney General regarding the immigration status of any individual, including reporting knowledge that a particular alien is not lawfully present in the United States" or "otherwise to cooperate with the Attorney General in the identification, apprehension, detention, or removal of aliens not lawfully present in the United States," *id.* § 1357(g)(10)(A)-(B);
- State officers may arrest individuals for harboring illegal aliens or engaging in smuggling of aliens, *id.* § 1324(c);
- Federal officials must "admit" state officials to immigration stations to "preserve the peace and make arrests" for state crimes, *id.* § 1358; and
- It is a federal crime for aliens to "fle[e]" state officials near border checkpoints, 18 U.S.C. § 758.

---

[6] As the United States noted in its amicus brief in *Texas IV*, the fact that this provision specifies when state or local officials can "step into the shoes of *federal* immigration officials . . . does not imply congressional intent to foreclose complementary state *legislation*, including in the field of unlawful entry/reentry." Amicus Br. at 21, *Texas IV*, No. 24-50149 (5th Cir. Oct. 20, 2025), Dkt. No. 375-1. To the contrary, it speaks to the scope of federal and state cooperation in this area.

This kind of cooperation between the United States and DPS is a regular occurrence. ROA.625-28 (Director Martin detailing extensive cooperation between DPS personnel and United States Border Patrol Officers and other federal law enforcement personnel). These provisions negate any suggestion that "Congress occupies" the field of entry and removal and leaves no role for the States. "It makes no sense to say the States are preempted from the field when numerous federal statutes throughout the United States Code establish that Congress affirmatively welcomes state enforcement of and participation in regulating the entry and removal of unlawful aliens." *Texas III*, 144 F.4th at 722 (Oldham, J., dissenting).

The Supreme Court has never found field preemption where Congress has invited state participation. The fields the Supreme Court has found field preempted—such as grain warehousing, *Rice*, 331 U.S. at 235–36; aircraft noise regulation, *City of Burbank v. Lockheed Air Terminal Inc.*, 411 U.S. 624, 633 (1973); wholesaling natural gas in interstate commerce, *Schneidewind v. ANR Pipeline Co.*, 485 U.S. 293, 300 (1988); nuclear safety, *Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 211–12 (1983); design and operation of tanker vessels, *United States v. Locke*, 529 U.S. 89, 111 (2000); and locomotive equipment regulation, *Kurns v. R.R. Friction Prods. Corp.*, 565 U.S. 625, 636 (2012)—contain no statutory provisions affirmatively inviting state participation comparable to those in the INA.

Take, for example, the field of nuclear safety, where the Supreme Court carefully confined preemption to protect "preexisting state authority." *Pac. Gas & Elec. Co.*, 461 U.S. at 209, 213 (regulating energy facilities). More recently, the

Supreme Court held that a regulation of uranium mining was not preempted, with members emphasizing that the federal government is not "the sole regulator of all matters nuclear" and limiting preemption to "core federal powers reserved to the federal government." *Va. Uranium*, 587 U.S. at 773 (lead opinion of Gorsuch, J.). That is the same methodical approach the Supreme Court took in *Arizona*, 567 U.S. at 401, holding that only one of the challenged provisions, involving alien registration, was field preempted.

And where the Supreme Court found field preemption in the immigration context, it noted that Congress had put in place a "complete system for alien registration" that was a "single integrated and all-embracing system" that foreclosed complementary state action. *Id.* at 400. This "complete scheme" was adopted to strike a "careful balance" and to "provide a full set of standards governing alien registration, including the punishment for noncompliance." *Id.* at 400-01.

Immigration law surrounding punishment for illegal reentry does not resemble this comprehensive and carefully balanced scheme surrounding alien registration. As the United States argued in the district court, "[t]he federal prohibition on reentry is contained in a single statutory subsection—indeed, in a single *sentence* in a single subsection" and is therefore "not the kind of 'comprehensive regulatory scheme'" that results in field preemption. ROA.932-33 (quoting *Garcia*, 589 U.S. at 208). Nor does the prohibition on illegal reentry contain the kind of "careful balanc[ing]" regarding obligations and punishments that would suggest a "decision to foreclose any state regulation in the area, even if it is parallel to federal standards."

*Arizona*, 567 U.S. at 401. Plaintiffs are unlikely to prevail in their claim that S.B.4 is field preempted.

### B. The challenged provisions of S.B.4 do not conflict with federal immigration law.

Conflict preemption comes in two forms: impossibility and purposes-and-objectives. Because Plaintiffs do not claim that "it is impossible to obey both" S.B.4 and federal immigration law, *Zyla*, 134 F.4th at 329, only purposes-and-objectives preemption is at issue here. That type of conflict preemption "arises when state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Id.* (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)).

Plaintiffs claim that the challenged provisions of S.B.4 "creat[e] an unacceptable obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Crystal Clear*, 142 F.4th at 364. The "pre-emptive purpose [must be] sought in the text and structure of the [federal provision] at issue." *Zyla*, 134 F.4th at 329 (alterations in original) (quoting *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664 (1993)). It is not enough to invoke "some brooding federal interest" or to appeal "to a judicial policy preference," *Va. Uranium*, 587 U.S. at 767, or the "possibility that federal enforcement priorities might be upset," *Garcia*, 589 U.S. at 212.

Because they bring a facial challenge, Plaintiffs' burden is even higher. A facial challenge is "the most difficult challenge to mount successfully." *United States v. Rahimi*, 602 U.S. 680, 693 (2024). To prevail, Plaintiffs must prove "that no set of circumstances exists under which [S.B.4] would be valid." *Id.* Accordingly, if S.B.4

can be lawfully applied in some circumstances, Plaintiffs' facial challenge must be rejected and "unconstitutional applications [handled] as they usually [are]—case-by-case." *United States v. Hansen*, 599 U.S. 762, 770 (2023).

Plaintiffs' conflict preemption argument fails as a facial challenge. Plaintiffs focus on isolated instances of potential conflicts—including some that *cannot* apply to the named Plaintiffs. But any isolated potential conflicts could not satisfy Plaintiffs' burden to show a likelihood of success on their claim that the challenged provisions are facially preempted.

There are circumstances where there is little question that each of the challenged provisions of S.B.4 can be lawfully applied without conflicting with the purposes and objectives of federal law. For instance, the illegal-reentry provision (Section 51.03) would not conflict with the purposes and objectives of federal law when being enforced against an alien who has already been adjudicated to have illegally reentered the United States (and who has no lawful defense against removal) or applied to an alien whom the United States encourages Texas to arrest and charge. In such circumstances, there is no conflict between federal objectives and the enforcement of S.B.4.

Similarly, there is no conflict with federal objectives if the State enters a return order that is agreed to by the alien and enforced by state officials transferring the alien to federal immigration authorities. Tex. Code Crim. Proc. art. 5B.002(c)(1). And if that alien later refuses to comply with the return order (perhaps after escaping custody), prosecuting that violation under Section 51.04 would not conflict with the

objectives of federal law. Because each of S.B.4's challenged provisions can lawfully be applied in at least some circumstances, Plaintiffs' facial challenge fails.

S.B.4 does not conflict with but instead mirrors and complements federal immigration law. As the United States explains, "far from *conflicting* with the INA's objectives, state-level penalties like those in Senate Bill 4 *advance* those objectives, further combatting and disincentivizing the very conduct that Congress has sought to eliminate in full." ROA.940. S.B.4 mirrors federal immigration law with regard to the crimes of unlawful entry and reentry in almost every respect. And because S.B.4 is "nearly a mirror image of federal law," that means "that any conflict will quite literally be the exception, not the rule." *Iowa Migrant Movement for Justice v. Bird*, 166 F.4th 688, 693 (8th Cir. 2026) (Mem.) (Stras, J., dissenting).

S.B.4's illegal-reentry provision makes it a crime to illegally re-enter after having previously been "denied admission," having been involuntarily "removed," or having voluntarily "departed from the United States." Tex. Penal Code § 51.03(a). Federal immigration law prohibits the exact same things. 8 U.S.C. § 1326(a). And as this Court recently explained, "parallel state regulation" does not raise conflict preemption concerns. *Zyla*, 134 F.4th at 338. Such an "overlap" between state and federal law "does not even begin to make a case for conflict preemption." *Garcia*, 589 U.S. at 212; *see also Chamber of Commerce v. Whiting*, 563 U.S. 582, 601 (2011) (finding no conflict preemption where a state law "traces" and "closely tracks IRCA's provisions in all material respects"); *California v. Zook*, 336 U.S. 725, 726-27 (1949) (holding a state law was not conflict preempted where it is "substantially the same" as a federal statute). Stated simply, "the purpose of the INA is to prohibit

illegal immigration." *Texas III*, 144 F.4th at 726 (Oldham, J., dissenting). "S.B.4 shares that exact same purpose" and furthers it "by expressly tethering itself to federal law." *Id.* It is harmonious—not in conflict—for a State to criminalize what the federal government criminalizes.

The district court determined that Section 51.03 and Article 5B.003 conflict with federal admissibility determinations because an individual with lawful residence or a pending status determination may be prosecuted for illegal reentry. ROA.1246. But the district court's conclusion stemmed from a misunderstanding of federal immigration law. Under federal immigration law, a pending status determination (or even being granted lawful residence) does not "establish a defense to criminal charges under section 1326." *United States v. Gutierrez-Alba*, 128 F.3d 1324, 1328 (9th Cir. 1997). Under federal law, an individual with a pending status determination or lawful residence could still be prosecuted for their already completed act of illegal reentry. Section 51.03 parallels the federal crime of illegal reentry. 8 U.S.C. § 1326.

S.B.4's return order provisions likewise complement rather than conflict with federal law. In fact, federal law allows an alien to voluntarily agree to return in lieu of prosecution, just as S.B.4 does. *Compare* Tex. Code Crim. Proc. art. 5B.002(b), *with* 8 U.S.C. §§ 1229a(d), 1229c(a)(1). And federal law similarly penalizes refusing to depart from the United States pursuant to a removal order. *Compare* Tex. Penal Code § 51.04, *with* 8 U.S.C. § 1253 (criminal penalties) *and* 8 U.S.C. § 1324d (civil fines).

Plaintiffs and the district court improperly construed the removal provisions "in a way that creates conflict with federal law." *Texas IV*, 173 F.4th at 663 n.8 (citation

omitted). The court assumed that Texas will "remove noncitizens from the United States without notice or consent from the federal government," ROA.1238, and Plaintiffs claim that this "blatantly overrides federal decisions about who can reenter and remain in the United States," ROA.49. But these claims run contrary to what Texas has "consistently represented" regarding cooperation with federal immigration authorities regarding those with "pending asylum applications," *Texas IV*, 173 F.4th at 663, or other basis for lawful presence. Texas will transport an alien to a port of entry, *see* Tex. Code Crim. Proc. art. 5B.002(e)(1)–(2), where a federal immigration official may repatriate the alien, *see* 8 U.S.C. § 1225(b)(1)(A)(i). That method of enforcement creates no conflict with federal immigration law, as the United States has explained. Indeed, it is "hard to see how" Texas "could interfere with Congress's purposes by turning an alien over to the Federal Government so it can place the alien in the very system Congress devised." *Texas III*, 144 F.4th at 728 (Oldham, J., dissenting).

If there are specific instances where Texas law allows for prosecution or a removal order despite the existence of federal defenses, then an alien may raise an as-applied challenge. But Plaintiffs do not have federal defenses themselves, and they purport to represent a class of all individuals who have reentered Texas illegally, whether those individuals have federal defenses or not.

For instance, one theoretical conflict that Plaintiffs raise is the possibility that Texas might prosecute someone who had the United States Attorney General's permission to reenter the country pursuant to 8 U.S.C. § 1326(a)(2)(A). ROA.49. This is precisely the kind of specific conflict that may be raised in an as-applied

challenge, not a facial challenge. Plaintiffs here could not raise such a challenge because they admit they reentered the country illegally and without the Attorney General's permission. ROA.13 (¶¶ 8–9), ROA.58 (¶¶ 5–6), ROA.62–63 (¶¶ 5–6).

Identifying "one possible unconstitutional application here, and another there" does not demonstrate facial invalidity. *Texas III*, 144 F.4th at 726 (Oldham, J., dissenting). Plaintiffs do not even show that the potential conflicts they point to are common among class members, let alone that there is "no set of circumstances" where the challenged provisions of S.B.4 may be lawfully enforced. *Rahimi*, 602 U.S. at 693. And as the United States notes this "mere possibility of some conflict is not sufficient to render Senate Bill 4 *facially* in conflict with federal law." ROA.939-40.

Nor could preemption arise from a potential conflict with the prosecutorial discretion that federal officials are given under federal immigration law. Conflict preemption must be found "in the text and structure of the [federal provision] at issue," *Zyla*, 134 F.4th at 329, not with vague policy preferences. As the Supreme Court explained in *Garcia*, "[T]he possibility that federal enforcement priorities might be upset is not enough to provide a basis for preemption. The Supremacy Clause gives priority to 'the Laws of the United States,' not the criminal law enforcement priorities or preferences of federal officers." 589 U.S. at 212.

Federal law makes illegal reentry a crime, regardless of whether one is granted lawful presence by the civil immigration system. Unlike in other preemption cases, there is no suggestion that Congress intended to limit enforcement of immigration law "to a specific range" or to "steer a middle path." *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 377–78 (2000). To the contrary, "[t]here is no golden mean

of illegal immigration as far as the laws of the United States are concerned. *All* of it is, well, illegal." *Texas III*, 144 F.4th at 726–27 (Oldham, J., dissenting) (citation omitted).

The discretion in question is just the ordinary exercise of prosecutorial discretion regarding whether and when to prosecute. But even "extensive enforcement discretion" does "not preclude parallel or non-parallel state regulation of the same conduct." *Zyla*, 134 F.4th at 338. That is different from the law enjoined in *Arizona* that allowed Arizona to impose criminal penalties for "aliens who accept unlawful employment" and thus conflicted with Congress's "deliberate choice not to impose criminal penalties on aliens who seek, or engage in, unauthorized employment." 567 U.S. at 405. Enforcement of the illegal reentry provisions of S.B.4 is not facially incompatible with the exercise of federal immigration discretion.

Turning to the return order provisions, there is no facial conflict with the exercise of federal discretion, either. Texas plans to coordinate with federal immigration officials to facilitate removal of those who are prosecuted under S.B.4 by delivering aliens to federal immigration officials at a lawful point of entry. *Texas IV*, 173 F.4th at 663. Given this method of enforcement—handing them over to federal officials—there is no conflict with federal law. If conflicts emerge in practice, then Plaintiffs can bring an as-applied challenge, but they cannot prevail on their facial conflict preemption claim.

* * *

Congress has not occupied the entire field of laws related to immigration or immigration enforcement but has instead left room for state cooperation and parallel

state legislation. S.B.4 does not conflict with federal immigration law, particularly not under the stringent standard required for a facial, pre-enforcement challenge. Plaintiffs have not demonstrated a likelihood of success on the merits.

## IV. The Remaining Factors Do Not Support a Preliminary Injunction.

Because Plaintiffs "cannot show a substantial likelihood of success on the merits, . . . there is no need for the court to address the other requirements" for a preliminary injunction. *Big Tyme Invs., L.L.C. v. Edwards*, 985 F.3d 456, 464 (5th Cir. 2021). Nevertheless, the remaining factors also all favor the State.

"When a statute is enjoined, the State necessarily suffers the irreparable harm of denying the public interest in the enforcement of its laws." *Veasey v. Abbott*, 870 F.3d 387, 391 (5th Cir. 2017) (per curiam). The harm to the State is compounded by the broad scope of the class of non-citizens that the district court provisionally certified and to which the district court provided injunctive relief.

The balance of the equities and the public interest factors "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). The public has a strong interest in permitting the State to control its border and preventing illegal entry and reentry through all the tools at its disposal, especially given the "human toll" of illegal immigration that is still impacting the state today. *Texas IV*, 173 F.4th at 662.

Conversely, Plaintiffs' fears such as their concern that they will be "wrongfully removed" and subjected to "extraordinary dangers of abduction, rape, torture, and death," ROA.54, are highly speculative and attenuated given the lack of evidence regarding whether any of the Plaintiffs will be removed, where they would be

removed to, and what the conditions of their removal would be. The absence of an injunction would also not prevent Plaintiffs (or any other class member) from raising as-applied defenses to S.B.4 if they are ever arrested and charged.

## V. The District Court Erroneously Certified a Provisional Class.

The district court abused its discretion by provisionally certifying a class of non-citizens under Federal Rule of Civil Procedure 23.

A district court may certify a class only if, after conducting a "rigorous analysis," it determines that the requirements of Rule 23 are met. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011). "[I]t is the party seeking certification who bears the burden of establishing that the requirements of Rule 23 have been met." *Bell Atl. Corp. v. AT&T Corp.*, 339 F.3d 294, 301 (5th Cir. 2003).

"The existence of an ascertainable class of persons to be represented by the proposed class representative is an implied prerequisite of Federal Rule of Civil Procedure 23." *John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007). If the proposed class is ascertainable, then the party seeking certification must show that "Rule 23(a)'s four threshold requirements" have been met, in addition to "the requirements of [either] Rule 23(b)(1), (2), or (3)." *M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 837 (5th Cir. 2012). In this case, Rule 23(b)(2)'s requirements apply.

The four threshold requirements of Rule 23(a) are numerosity, commonality, typicality, and adequacy. The party seeking certification must prove that:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

In addition, under Rule 23(b)(2) the party seeking certification must prove that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

Following the preliminary-injunction hearing, the district court found that the requirements of Rule 23(a) and (b)(2) were met and "provisionally" certified the following class:

> All noncitizens who now or in the future enter, attempt to enter, or are found in the state of Texas after they have been denied admission to or excluded, deported, or removed from the United States, or after they have departed from the United States while an order of exclusion, deportation, or removal was outstanding.

ROA.1258.

For three reasons, the district court's decision to provisionally certify a class was an abuse of discretion. First, the district court failed to conduct the rigorous analysis required by Rule 23. Second, it erroneously found that the class was ascertainable. And third, it erroneously found that the class representatives (L.M.L. and K.G.S.) would adequately represent the class.

### A. The district court did not perform the required "rigorous" analysis under Rule 23.

The district court stated that its certification decision was "for provisional purposes only for the purposes of injunctive relief" and that "further inquiry into the appropriateness of formally certifying the class should be conducted." ROA.1266.

By certifying a "provisional" class on an expedited basis, the district court failed to conduct the "rigorous analysis" required by Rule 23. *See Wal-Mart*, 564 U.S. at 351. In *Wal-Mart*, the Supreme Court held that "[a] party seeking class certification must *affirmatively demonstrate* his compliance with [Rule 23]." *Id.* at 350. "[C]ertification is proper only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.'" *Id.* at 350–51 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)); *accord M.D.*, 675 F.3d at 837 ("It is well-established that '[a] district court must conduct a rigorous analysis of the [R]ule 23 prerequisites before certifying a class.'"). "[A]ctual, not presumed, conformance with Rule 23(a) [is] indispensable." *Falcon*, 457 U.S. at 160.

In its certification order, the district court concluded that Plaintiffs had made "an adequate showing *at this stage of the litigation* to warrant *at least* a provisional class certification." ROA.1258 (emphasis added). But the early "stage of the litigation" does not lighten Plaintiffs' burden; the same rigorous analysis is required for "provisional" classes as for normal classes.

Rule 23 does not expressly authorize "provisional" classes. The Ninth Circuit recently explained that "so-called provisional classes, even assuming that they are

valid," are subject to the same "demanding requirement[s]" under Rule 23 as ordinary classes. *Dickinson v. Trump*, 174 F.4th 634, 646 (9th Cir. 2026). The District Court for the District of Columbia has similarly observed that "[p]rovisional certification does not lessen the rigor of Rule 23." *Escobar Molina v. U.S. Dep't of Homeland Sec.*, 811 F. Supp. 3d 1, 55 (D.D.C. 2025). And Newberg & Rubenstein on Class Actions suggests that "provisional class certification" should still require "full certification proceedings" and that the phrase "should not be seen or used to reference a short cut in the certification analysis but rather to suggest a possible limitation on the duration of certification." 2 William B. Rubenstein, Newberg and Rubenstein on Class Actions § 4:30 (6th ed., June 2026 update).

Justice Alito warned against a "hasty application" of Rule 23 in his concurrence in *Trump v. CASA, Inc.*, 606 U.S. 831, 868 (2025) (Alito, J., concurring). He wrote that "district courts should not view today's decision as an invitation to certify nationwide classes without scrupulous adherence to the rigors of Rule 23. Otherwise, the universal injunction will return from the grave under the guise of 'nationwide class relief.'" *Id.* He emphasized that a "hasty application of [Rule 23] can have drastic consequences, creating 'potential unfairness' for absent class members and confusion (and pressure to settle) for defendants." *Id.* (citation omitted).

The district court's suggestion that a lower standard for certification was required "at this stage of the litigation," ROA.1258, was incorrect, and it erred in certifying a "provisional" class without scrupulously adhering to Rule 23's rigors. *See M.D.*, 675 F.3d at 838 (reversing certification order after holding "that the

district court failed to conduct the 'rigorous analysis' required by Rule 23 in deciding to certify the proposed class").

### B. The class of noncitizens is not ascertainable.

The class of noncitizens the district court certified is inherently indeterminate and thus not ascertainable.

It is an implied requirement of Rule 23 that, "to maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable." *Braidwood Mgmt., Inc. v. Equal Emp. Opportunity Comm'n*, 70 F.4th 914, 933 n.36 (5th Cir. 2023). This requirement applies to Rule 23(b)(2) classes just as it applies to Rule 23(b)(3) classes. *Id.* And while this Court has noted that "[s]ome courts" have downplayed the ascertainability requirement for Rule 23(b)(2) classes, *In re Monumental Life Ins. Co.*, 365 F.3d 408, 413 (5th Cir. 2004), it has not done so itself, *Braidwood*, 70 F.4th at 933 n.36.

For a class to be ascertainable, the district court must be able "'to identify class members at some stage of the proceeding,'" even if not at the outset of the lawsuit. *Frey v. First Nat'l Bank Sw.*, 602 F. App'x 164, 168 (5th Cir. 2015) (per curiam) (quoting 1 William B. Rubenstein, Newberg on Class Actions § 3:3 (5th ed. 2011)). A class is not ascertainable if it is "amorphous" or "imprecise." *Id.*

Because the district court would not be able to identify "[a]ll noncitizens who now or in the future enter, attempt to enter, or are found in the state of Texas" at *any* stage of the proceeding, *see* ROA.1258, the class it certified is not ascertainable. The named Plaintiffs admitted during their depositions that they "wouldn't know" how many people are part of the class or "how many could enter" the State of Texas

in the future. ROA.1133, 1134, 1172. The district court could not determine this information either.

That the class members have violated federal law makes the prospect of identifying them even less likely. Because they fear deportation under federal law, class members endeavor not to be detected. That is why the named Plaintiffs sought to proceed anonymously. *See* ROA.507 ("Plaintiffs fear being targeted, threatened, and facing potential retaliation by law enforcement if their identities are public. Federal agencies have ramped up immigration enforcement in a variety of ways since 2024 . . . ."). The goal of the purported class is *not* to be ascertained.

Even assuming it were possible, identifying the class members would require "extensive and individualized fact-finding," which further undermines the district court's conclusion that the class was ascertainable. *See Career Counseling, Inc. v. AmeriFactors Fin. Grp., LLC*, 91 F.4th 202, 206 (4th Cir. 2024); *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 593 (3d Cir. 2012) ("If class members are impossible to identify without extensive and individualized fact-finding or 'mini-trials,' then a class action is inappropriate."); *cf. Frey*, 602 F. App'x at 168 (finding that the class was ascertainable and distinguishing cases in which, like this one, "identification of class members [would] be unmanageable"—or "fraught with difficulties").

To identify the members of the class, the district court would need to determine whether a given individual (i) is a noncitizen, (ii) who has "been denied admission[,] . . . excluded, deported, or removed from the United States," and (iii) who has "departed from the United States while an order of exclusion, deportation, or removal was outstanding." ROA.1258. This would not be a feasible undertaking,

particularly because membership in the class will change as new noncitizens reenter or attempt to reenter the State of Texas.

The district court concluded that the class was ascertainable because "[t]here are objective criteria" to determine its members. ROA.1263. But objective criteria are not sufficient to make a class ascertainable. The district court must be able to use the "objective criteria" to determine, "at some stage of the proceeding," whether a particular individual is a class member. *See Frey*, 602 F. App'x at 168. Because it would be impossible to do that, the class is not ascertainable.

### C. The class representatives' claims are not typical, and they could not adequately represent the class.

Finally, the class representatives' claims are not typical of the class, and the class representatives would not adequately represent the class.

Rule 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." The test for typicality "focuses on the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent." *Stirman v. Exxon Corp.*, 280 F.3d 554, 562 (5th Cir. 2002) (citation omitted). "[T]he critical inquiry is whether the class representative's claims have the same essential characteristics of those of the putative class." *Id.* (citation omitted).

The adequacy requirement often "overlaps with the typicality requirement because in the absence of typical claims, the class representative has no incentive to pursue the claims of the other class members." *Id.* at 563 n.7 (citation omitted). Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect

the interests of the class." To be adequate, "[c]lass representatives must 'be part of the class and possess the same interest and suffer the same injury as the class members.'" *In re Deepwater Horizon*, 785 F.3d 1003, 1015 (5th Cir. 2015) (citation omitted).

Because the named Plaintiffs' immigration status differs from the class of noncitizens they represent, their claims are not typical of the class, and they cannot adequately represent the class's interests. L.M.L. is a lawful permanent resident, and K.G.S. has been preapproved for a U-visa. ROA.1129, 1165. L.M.L. and K.G.S. are both authorized by the federal government to be in the United States. This fact distinguishes them from the vast majority of class members, who are not authorized to be in the United States.

The difference in immigration status between the named Plaintiffs and the other class members means that the Plaintiffs' claims do not have the same "essential characteristics" as the claims of other class members. *Stirman*, 280 F.3d at 562. The difference in immigration status also gives rise to different interests, which may conflict with each other. It is not necessarily in the interest of class members who are not authorized to be in the United States for this lawsuit to be brought on their behalf. If these class members are identified as members of the class, they have reason to fear prosecution and deportation under *federal* law, which they have violated by reentering and remaining in the United States unlawfully. Because of their lawful status, the named Plaintiffs do not realistically have the same fear of deportation or the same "stake in the outcome" as other class members. *Jenkins v. Raymark Industries, Inc.*, 782 F.2d 468, 472 (5th Cir. 1986).

The district court concluded that L.M.L. and K.G.S. were adequate representatives because the differences in immigration status do not "create conflicts between the named plaintiffs' interests and the class members' interests." ROA.1261 (quoting *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 626 (5th Cir. 1999)). But these differences in immigration status *do* create potential conflicts, and the district court's conclusion to the contrary results from the fact that it did not undertake the rigorous analysis Rule 23 requires. *See Stirman*, 280 F.3d at 563 ("Although the district court stated that 'no conflicts exist to preclude certification,' this is not a sufficiently 'rigorous' analysis to demonstrate that Hunter is an adequate representative.").

## Conclusion

For these reasons, this Court should conclude that the district court erred both in granting a preliminary injunction and in provisionally certifying a class action. In addition, this Court should determine that Plaintiffs lack standing to challenge the return order provisions.

Respectfully submitted.


Ken Paxton
Attorney General of Texas

Brent Webster
First Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
(512) 936-1700

William R. Peterson
Solicitor General

/s/ Daniel M. Ortner
Daniel M. Ortner
Assistant Solicitor General

D. Bowie Duncan
Assistant Solicitor General

*Counsel for Defendant–Appellant*

## Certificate of Compliance

This brief complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 10,831 words, excluding the parts of the brief exempted by Rule 32(f); and (2) the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Equity) using Microsoft Word (the same program used to calculate the word count).

/s/ Daniel M. Ortner
Daniel M. Ortner